952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Rose EASLEY, Plaintiff-Appellant,
v.
VALUE CITY STORES, et al., Defendants-Appellees, Cross-Appellants.
 Nos. 91-5288, 91-5317.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1992.
 
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an employment discrimination action brought in a federal district court under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. The plaintiff also asserted pendent state law tort claims. The district court granted summary judgment for the defendants on all but one count; that count was later dismissed for failure to prosecute.
 
 
 2
 The main issues raised by the plaintiff on appeal are whether the district court erred in granting partial summary judgment for the defendants and whether the failure of the plaintiff's trial counsel to get the case ready for trial justified the dismissal for failure to prosecute. We resolve both of these issues in favor of the defendants.
 
 
 3
 In a cross-appeal, the defendants have challenged the failure of the district court to award them costs, expenses and attorney fees. We shall remand the case for an award of costs and for a statement of reasons explaining the decision not to award attorney fees.
 
 
 4
 * Defendant Shonac Corporation's business includes the operation of shoe departments leased from retail outlets such as defendant Value City. Shonac hires a number of management trainees who, upon successful completion of a training program, become eligible for promotion to assistant manager. The next step in the promotion ladder is the position of department manager.
 
 
 5
 Plaintiff Rose Easley, a black woman, was hired by Shonac as a management trainee in August of 1985. Shonac first assigned Ms. Easley to its outlet in a Value City store in Clarksville, Indiana. After she had worked there for 90 days, Shonac increased her pay from $4.50 per hour to $4.65 per hour.
 
 
 6
 Ms. Easley sought a job as assistant manager at a new Shonac outlet on Dixie Highway. Shonac's management initially indicated that she would get the job and announced her promotion in the company newsletter. Ms. Easley was told later, however, that the company had decided that the outlet was not large enough to require an assistant manager.
 
 
 7
 In March of 1986 Shonac promoted Ms. Easley to an assistant manager's job at a Shonac outlet in a Value City store in Louisville, Kentucky, at a starting salary of $250 per week. Two months later Shonac raised her salary to $255 per week.
 
 
 8
 Ms. Easley's supervisor in Louisville was Wanda Blevins. Ms. Easley and Ms. Blevins clearly did not get along, and Ms. Easley asserts that Ms. Blevins subjected her to racial slurs and discriminatory treatment. Ms. Easley says, for example, that she was required to vacuum floors in front of subordinate employees, that white assistant managers were treated more favorably than she was, and that she was cursed several times. She adds that among other racist comments, Ms. Blevins told her that her husband was a member of the Ku Klux Klan and that he would burn Ms. Easley "on the Cross like a hot dog."
 
 
 9
 In October of 1986 Shonac offered Ms. Easley a promotion to the position of manager at a Shonac outlet in Buffalo, New York. That promotion would have carried a $50 per week raise, eligibility for a bonus based on performance, and payment of moving expenses. Ms. Easley declined the offer. In April of 1987 she declined a similar offer to manage Shonac's outlet in Trenton Falls, New Jersey. She then unsuccessfully sought a position as manager of Shonac's outlet in a Burlington Coat Factory store in Louisville.
 
 
 10
 According to an uncontroverted affidavit by Roger Emily, Shonac's district manager, Ms. Easley's job performance began to deteriorate at about this time. In March of 1987 an hourly employee quit because she could not get along with Ms. Easley. The following month a customer wrote a letter to Value City's Louisville store complaining about Ms. Easley's rudeness. A supervisor met with Ms. Easley and issued a formal reprimand to her. In a memo to the store manager dated July 21, 1987, Ms. Easley complained of discriminatory treatment.
 
 
 11
 In August of 1987 Ms. Easley sustained an injury that resulted in her staying off work until October of the following year. Her physician ultimately released her to work without any restrictions, but when Ms. Easley returned to work she indicated that she could not perform certain tasks because of her injury. Her physician then amended his report to say that Ms. Easley was restricted in what she could do. When her supervisors received the second report, they refused to permit her to work until she could do so without restrictions. She never returned to the job.
 
 
 12
 Ms. Easley had filed a discrimination charge with the Equal Employment Opportunity Commission on June 19, 1987. The EEOC issued a right-to-sue letter on September 16, 1988.
 
 
 13
 On December 16, 1988, Ms. Easley filed a four-count complaint against the defendants in the United States District Court for the Western District of Kentucky. Count I alleged racially discriminatory practices in violation of 42 U.S.C. § 1981. Count II alleged physical, psychological, and emotional injury. Count III alleged outrageous conduct. Count IV alleged racially disparate patterns and practices in violation of Title VII of the Civil Rights Act of 1964.
 
 
 14
 The defendants moved for summary judgment, and their motion was granted as to the first three counts. The district court allowed the case to go forward on the narrow issue, raised in Court IV, of whether Ms. Easley had been subjected to a hostile environment due to racial discrimination. That claim was eventually dismissed under Rule 41(b) of the Federal Rules of Civil Procedure because of failure to prosecute. This appeal followed. The defendants, as noted above, have cross-appealed the denial of their motion for costs, expenses and attorney fees.
 
 II
 
 15
 Ms. Easley says that her trial counsel was "physically and emotionally burned out," and it is undisputed that he repeatedly disregarded the trial courts orders, ignored deadlines, and failed to comply with the requirements of the Federal Rules of Civil Procedure. The attorney showed, in the court's words, "blatant disregard" for his obligations as counsel.
 
 
 16
 After the court had granted summary judgment for the defendants on Counts I-III and had set a trial date, Ms. Easley's counsel moved to continue the trial; he maintained that Ms. Easley could not appear at the scheduled time because of mental instability. Over the defendants' strenuous objection, the court granted the continuance and rescheduled the trial for July 9, 1990. The court warned Ms. Easley that if she did not "announce ready for trial" on that date, her action would be dismissed.
 
 
 17
 On June 25, 1990, Ms. Easley's counsel informed the court that his client was still emotionally disturbed and could not go to trial on July 9. The court directed counsel to furnish a medical report diagnosing Ms. Easley's condition. No such report was presented.
 
 
 18
 On the morning of July 9, 1990, the defendants' counsel and witnesses appeared in the courtroom ready for trial. Ms. Easley's counsel appeared with affidavits averring that Ms. Easley was unable to go to trial because of her emotional condition. Ms. Easley herself was nowhere to be found. Pursuant to an oral motion by defendants, the court dismissed the case under Rule 41(b) of the Federal Rules of Civil Procedure.
 
 
 19
 It later developed that Ms. Easley had intended to be in court at the appointed time but had gone to the wrong courthouse by mistake. The affidavits submitted to the court on July 9 indicated that Ms. Easley would not have been prepared to go to trial in any event, and this position was reiterated in a subsequent motion for reconsideration.
 
 
 20
 A trial court's dismissal of a complaint under Rule 41(b) is subject to review under an abuse of discretion standard. See Link v. Wabash Railroad Co., 370 U.S. 626, 633 (1962); Carter v. City of Memphis, Tenn., 636 F.2d 159, 161 (6th Cir.1980). Ms. Easley's contention that the trial court abused its discretion in the instant case rests on two grounds, which we shall consider in turn.
 
 
 21
 First, Ms. Easley argues that her "lawyer committed every form of professional negligence known to lawyer-kind." This may be grounds for the plaintiff's bringing a malpractice suit against the lawyer, but it is not grounds for setting aside the dismissal. Link, 370 U.S. at 634 n. 10. As the Supreme Court observed in rejecting a similar argument in Link,
 
 
 22
 "There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's inexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose his attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent...." Id. at 633-34.
 
 
 23
 Ms. Easley says that she was emotionally disturbed throughout the episode, was not capable of monitoring her attorney's actions, and therefore should not be held accountable for them. The district court was aware of her claims of mental difficulties, but it also had first-hand knowledge of the expense and inconvenience to which the defendants were being put. To keep this suit alive "merely because plaintiff should not be penalized for the omissions of h[er] own attorney would be visiting the sins of plaintiff's lawyer upon the defendant." Id. at 634 n. 10. This the courts are unwilling to do.
 
 
 24
 Ms. Easley next points out that because it is such a harsh sanction, dismissal is disfavored by the courts. See Patterson v. Township of Grand Blanc, 760 F.2d 686, 688 (6th Cir.1985); Carter, 636 F.2d at 161. She argues that the district court should have imposed a milder sanction. In Harris v. Callwood, 844 F.2d 1254 (6th Cir.1988), however, we held that a district court has discretion to dismiss an action for failure to prosecute if the derelict party has been given notice that "dismissal is contemplated," or if that party engaged in "bad faith or contumacious conduct.' " Id. at 1256. Both prerequisites were satisfied in the case at bar. On the record before it, the district court erred neither in dismissing the case nor in denying the subsequent motion for reconsideration.
 
 III
 
 25
 Ms. Easley argues that the district court erred in entering summary judgment against her on the first three counts of her complaint.
 
 A. Section 1981 Claims
 
 26
 Ms. Easley alleges a discriminatory failure to promote her to assistant manager of the Dixie Highway store in 1985 and a discriminatory failure to promote her to a manager's position in 1987. In Patterson v. McClean Credit Union, 491 U.S. 164, 185 (1989), the Supreme Court held that promotion discrimination claims can be maintained under § 1981 "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer." The Court's example of a case involving a "new and distinct relation" was Hishon v. King & Spaulding, 467 U.S. 69 (1984), which involved the refusal of a law firm to accept an associate for partnership.
 
 
 27
 The district court found that Ms. Easley's potential promotions were determined under a management training program that allowed employees to move from management trainee to assistant manager to manager. Such promotions would not represent "a new and distinct relation." See Harrison v. Associates Corp. of North America, 917 F.2d 195, 197-98 (5th Cir.1990) ("routine increases in salary or responsibility which are clearly part of an original contract of employment" are not actionable under § 1981); Malhotra v. Cotter & Co., 885 F.2d 1305, 1311 (7th Cir.1989) (even broad interpretation of Patterson leads to conclusion that routine in-house promotions are not actionable).
 
 B. Title VII Claims
 
 28
 The allocation of burdens in a Title VII action is as follows:
 
 
 29
 "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the [adverse action]. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (citation omitted).
 
 
 30
 Ms. Easley failed to make a prima facie showing that she would have become assistant manager at the new Dixie Highway store but for racial discrimination. Shonac admittedly told her it had decided the store was too small for an assistant manager, and Ms. Easley did not show that anyone else got the job. She offered nothing to suggest that the position taken by Shonac was a pretext for discrimination, and she failed to rebut Shonac's showing that because of low business volume, the Dixie Highway store has never had an assistant manager.
 
 
 31
 As for Ms. Easley's claim that she was discriminated against in 1987 when she was denied a promotion to manager, the evidence shows that a white woman, a Ms. Mullins, got the job even though she had not gone through the training program and was only a "lead person" rather than an assistant manager. Assuming that this evidence establishes a prima facie case under Title VII, Shonac has articulated a legitimate, nondiscriminatory reason for its conduct: Ms. Mullins was an excellent employee who worked well with her colleagues and customers. She had been with Shonac for almost two years and had nine prior years of experience in the shoe business. Under Burdine, the burden shifts to Ms. Easley to show that this asserted nondiscriminatory reason is actually a pretext for discrimination. Ms. Easley provided no evidence of pretext, and the district court therefore was correct in granting summary judgment to the defendants on this issue.
 
 C. State Law Claims
 
 32
 We need not reach the substance of Ms. Easley's pendent state law claims. If the district court had not dismissed those claims on motion for summary judgment, it would have had to dismiss them for failure to prosecute when the remaining federal claim was dismissed. Any error in disposing of the state claims by way of summary judgment was thus harmless.
 
 IV
 
 33
 As prevailing parties, the defendants submitted a bill of costs to the district court pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1290. The bill of costs was never ruled on. The defendants were clearly entitled to appropriate costs, and such costs should be taxed on remand.
 
 
 34
 The defendants also moved for attorney fees and expenses, and that motion was denied without explanation. The lack of any explanation leaves us unable to say whether the district court abused its discretion in denying the motion, and the court should provide a brief statement of reasons on remand.
 
 
 35
 The judgment in favor of the defendants is AFFIRMED, and the case is REMANDED for further proceedings consistent with this opinion.