**Thelma R. HARRISON, Plaintiff–Appellant,**

v.

**The ASSOCIATES CORPORATION OF NORTH AMERICA, Defendant–Appellee.**

No. 89–7124.

United States Court of Appeals, Fifth Circuit.

Nov. 15, 1990.

---

Douglas R. Larson, Mesquite, Tex., for plaintiff-appellant.

Jonathan C. Wilson, John deSteiguer, Haynes & Boone, Stephanie C. Hawbaker–Rumph, Asst. Gen. Counsel, Associates Corp. of North America, Dallas, Tex., for defendant-appellee.

Before CLARK, Chief Judge, THORNBERRY and HIGGINBOTHAM, Circuit Judges.

CLARK, Chief Judge:

## I.

Thelma Harrison appeals the district court's dismissal of her claim of racial discrimination under 42 U.S.C. § 1981 and the district court's judgment in favor of The Associates Corporation of North America (Associates Corp.) on her companion Title VII claim. We affirm.

## II.

Harrison is a 57 year old black female who has worked for Associates Corp. since 1968. In 1984 Harrison was assigned to work as a C.R.T. operator in the United States Auto Club division (USAC) of Associates Corp. The C.R.T. department, like the other departments of the USAC, has a lead operator who is responsible for assigning priority to work and providing assistance to the other employees in the department. Lead operators are not automatically paid more than the other employees in the department and have no general supervisory duties such as hiring and firing operators. The C.R.T. department had five employees: two black females and three white females.

From 1984 to August 1986 the C.R.T. department was supervised by Louise Working. During the last few months of Working's tenure as supervisor there was no lead C.R.T. operator. After Working left her employment at the USAC in August 1986 the C.R.T. department began to have difficulty in completing its data entry work and the operators began to bicker among themselves and have trouble cooperating.

In November 1986, Ouida Howard was temporarily assigned to supervise the C.R.T. department in addition to her regular duties in the cashiering department. Howard transferred one of the white female operators to another department and made Harrison acting lead C.R.T. operator. Harrison's designation as acting lead oper-

ator was to provide a trial period. The understanding was that the designation would be made permanent if Harrison performed satisfactorily.

While Harrison was acting lead operator, the C.R.T. department continued to experience backlogs and Howard began to receive complaints from the other operators, both black and white, about Harrison's demeaning and abusive attitude toward them. Howard met with and counseled Harrison on several occasions while Harrison was acting lead operator. When the problems persisted, Howard determined that Harrison was not suited for the lead operator position. Nancy Daughtery was appointed lead operator. Daughtery is a white female who had worked in other departments of USAC since 1984, but had experience and training in the C.R.T. area. When Daughtery was appointed lead C.R.T. operator she received a raise of approximately $100 per month and the official title of "Lead C.R.T. Operator."

After the appointment of Daughtery, Harrison complained to the Vice President of Employee Relations, Tom Barnes, a black male. He determined that she had been treated fairly.

Harrison filed a complaint against Associates Corp. with the district court alleging claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Age Discrimination in Employment Act. The district court dismissed Harrison's § 1981 claim and Harrison dismissed her age discrimination claim. After the bench trial, the district court entered judgment for the defendants on the Title VII claim.

### III.

Harrison presents three issues for review. She claims that the district court erred in dismissing her claim under 42 U.S.C. § 1981 and that the district court erred in not allowing the issues of fact common to her § 1981 claim and her Title VII claim to be decided by a jury. She also claims that the district court applied the wrong standard in evaluating the evidence at trial.

### A. The § 1981 Claim

In the preliminary stages of this case, Associates Corp. moved to dismiss Harrison's § 1981 claim. Since Harrison's § 1981 claim and her Title VII claim were based on the same set of facts, the district court, relying on precedent in this circuit, granted Associates Corp.'s motion. *See Parker v. Mississippi State Dept. of Public Welfare*, 811 F.2d 925, 927 n. 3 (5th Cir.1987). After the district court dismissed the § 1981 claim but before entry of judgment, the Supreme Court announced its decision in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). *Patterson* clearly governs our analysis in this case.

In *Patterson*, the Supreme Court ruled that post-contract formation allegations of racially discriminatory conduct are not actionable under § 1981 since § 1981 only guards against racial discrimination in the "making" of contracts and the right to "enforce" the contract through legal processes. 109 S.Ct. at 2372–74. In order to state a claim cognizable under § 1981 "the plaintiff's claim must involve improper 'conduct at the initial formation of the contract' or 'conduct which impairs the right to enforce contract obligations through legal process.'" *Lavender v. V & B Transmissions & Auto Repair*, 897 F.2d 805, 807 (5th Cir.1990) (*quoting Patterson*, 109 S.Ct. at 2374.)

However, while *Patterson* draws a bright line between racially discriminatory conduct incident to the formation of a contract and racially discriminatory conduct in the performance of duties imposed by the contract, the Court acknowledged that, in the employment context, post-formation conduct which by its nature involved "the opportunity to enter into a new contract with the employer" was actionable under § 1981. *Patterson*, 109 S.Ct. at 2377. A claim that an employer failed to promote an employee because of the employee's race is within the reach of § 1981 when the promotion "rises to the level of an opportunity for a new and distinct relation between employee and employer." *Id.* Thus, the essential inquiry in this case is whether the position as lead C.R.T. operator, which Harrison was denied, amounted to a new and

distinct relation from her position as C.R.T. operator—a new contract of employment. It does not.

In *Patterson,* the Court sought to distinguish between routine increases in salary or responsibility which are clearly part of an original contract of employment and promotions which signal new a contractual relationship between employee and employer. In determining whether a particular promotion rises to the level of a new and distinct relation between employer and employee, the court must compare the nature of the employee's current duties, compensation, and benefits and duties, compensation, benefits in the different position in question. As an example of one change in employment position which constitutes a new and distinct relation, the Court cites *Hishon v. King and Spaulding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). The plaintiff in *Hishon* was an associate in a law firm who alleged that she was denied partnership status because she is a woman. The Court's example is instructive. The difference between rights, duties, and compensation of associates and partners in a law firm are significant. While both the associate and the partner are attorneys, the role of the partner is supervisory and carries increased responsibility. It may also involve personal liability for the affairs of the firm. The method of compensation and amount of benefits attendant to an associate position differ from those of a partner. In applying *Patterson,* the Fourth Circuit has ruled that a promotion from billing clerk to supervisor is the type of promotion which also engenders a new and distinct relation between employee and employer covered by § 1981. *Mallory v. Booth Refrigeration Supply Co., Inc.,* 882 F.2d 908, 911 (4th Cir.1989).

In the case before us today there is very little difference between the job of C.R.T. operator and lead C.R.T. operator. The principal change in duties is that the lead C.R.T. operator assigns priority to the work for the department. The lead operator also assists other operators when they have questions and may occasionally train a new C.R.T. operator. The lead C.R.T. operator has no general supervisory duties. Both the C.R.T. operator and lead C.R.T. operator work under the direction of the department supervisor. Normally, the lead C.R.T. operator receives no additional salary or benefits. However, in this case Ms. Daughtery, the new lead C.R.T. operator who was transferred from another department, was given a raise of $100.00 per month. Although a raise in salary which accompanies a change in position is evidence of a new and distinct relation, a raise which is accompanied by no significant change in duties and responsibilities does not reach the level of a change in employment relationship protected by § 1981. Harrison's position as acting lead C.R.T. operator did not result in a new and distinct relationship.

B. The Jury Trial Claim

█ While the reason that the district court gave for dismissing Harrison's section 1981 claim was incorrect, *see Lytle v. Household Mfg. Co.,* —— U.S. ——, 110 S.Ct. 1331, 1336–37, 108 L.Ed.2d 504 (1990), the district court was correct to dismiss her claim for the reasons stated in this opinion. Since the district court properly dismissed Harrison's § 1981 claim, her Title VII claims were not entitled to trial by jury.

C. The District Court's Evaluation of the Evidence

█ Harrison claims that the district court improperly evaluated the evidence in this case in light of the method of analysis set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* dealt with a district court's preliminary dismissal of a plaintiff's Title VII disparate treatment claim. However, in today's case the Title VII disparate treatment claim was fully tried and the court issued a decision on the merits as to the ultimate issue— whether Harrison was denied the lead C.R.T. operator position because of her race. In a fully tried case, the court can move directly to the question of whether the ultimate issue was established by the whole of the proof. *See United States Postal Serv. v. Aikens,* 460 U.S. 711, 713–16, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983). The district court found that (1) Harrison had failed to present any evidence

which would remotely suggest that her assignment as acting lead CRT operator was not made permanent because of her race and (2) that Associates Corp. had clearly rebutted any prima facie showing that Harrison had made by presenting legitimate, nondiscriminatory reasons for the decision not to permanently assign the lead C.R.T. operator position to Harrison. The district court's evaluation of the evidence in this case was correct. The latter finding was superfluous. Record evidence supports the determination that Harrison's abrupt and abusive behavior towards her co-employees, which led to considerable animosity in the department, rather than her race was the reason she was denied the permanent lead C.R.T. operator position.

## IV.

The judgment of the district court is AFFIRMED.