Kenneth M. **PLAISANCE**, Plaintiff,

v.

**TRAVELERS INSURANCE COMPANY, Defendant.**

**Civ. A. No. 1:93–cv–1021–RLV.**

United States District Court,
N.D. Georgia,
Atlanta Division.

May 20, 1994.

Plaintiff appeared pro se.

John F. Wymer, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, for defendant.

### ORDER

VINING, Chief Judge.

After carefully considering the report and recommendation of the magistrate judge, the court hereby adopts it as the opinion and order of this court. This court notes that the magistrate judge's conclusion that the 1991 amendments to the Civil Rights Act are not retroactive has been confirmed by the United States Supreme Court. *See Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1522, 128 L.Ed.2d 229 (1994); *Rivers v. Davison,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (April 26, 1994).

SO ORDERED.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

HARPER, United States Magistrate Judge.

Presently before the undersigned Magistrate Judge is defendant's motion for summary judgment filed January 20, 1994. (Docket No. 31). In a letter dated January 24, 1994, the Clerk of Court notified plaintiff of the filing of this motion, of his duty to respond, and of the possible consequences of a failure to respond. Plaintiff has in fact filed a written response to defendant's motion. (Docket No. 36). Based upon these facts, the undersigned Magistrate Judge finds that defendant's motion for summary judgment is now ripe for review.

Under the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987). On summary judgment, the parties must satisfy the following burdens of proof:

The party moving for summary judgment bears the initial burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). An issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S.

574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Once the moving party meets this initial burden, summary judgment is then appropriate as a matter of law against the non-moving party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. In making a sufficient showing, the nonmoving party must "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e). In opposing summary judgment, the nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970)). If, so viewed, a rational trier of fact could find a verdict for the nonmoving party under the substantive evidential standard, the nonmoving party can defeat summary judgment. *Id.* 477 U.S. at 252, 106 S.Ct. at 2512.

*Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998–9 (11th Cir.1992).

 It should be noted that conclusory allegations based on mere subjective beliefs do not create a genuine issue of material fact. *Carter v. Miami*, 870 F.2d 578, 585 (11th Cir.1989); *Ramsey v. Leath*, 706 F.2d 1166, 1170 (11th Cir.1983). *See also, Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir.1990) (collecting cases). Specifically, in regards to plaintiff's claim under Title VII of the Civil Rights Act of 1964, it is well established that a Title VII plaintiff opposing a motion for summary judgment must present significantly probative evidence on the issue of discrimination to avoid summary judgment. *Young v. General Foods Corp.*, 840 F.2d 825 (11th Cir.1988), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590 (11th Cir.1987). Reliance solely upon speculation and unsubstantiated hearsay constitutes a failure to meet this burden. *See, e.g., Palucki v. Sears, Roebuck and Co.*, 879 F.2d 1568 (7th Cir. 1989) ("a party to a lawsuit cannot ward off summary judgment with an affidavit or deposition based on rumor or conjecture"); *Benson v. Vermont American Corp.*, 723 F.Supp. 1439 (M.D.Ala.1988) ("inadmissible evidence offered in the form of a deposition, cannot be considered by the court"), *aff'd without opinion*, 874 F.2d 820 (11th Cir.1989); *Williams v. Housing Authority*, 709 F.Supp. 1554 (M.D.Fla.1988) ("the court cannot base direct-evidence analysis on hearsay testimony by plaintiff"), *aff'd without opinion*, 872 F.2d 434 (11th Cir.1989).

In light of the above standard and resolving all evidentiary conflicts in favor of plaintiff as non-movant for purposes of considering defendant's motion for summary judgment, the undersigned finds that the following is an accurate summary of the relevant facts underlying plaintiff's claims. To the extent that further facts are relevant to each of plaintiff's claims, these facts are discussed further below.

Plaintiff was initially hired by defendant into the position of claims representative trainee on May 22, 1989. After completing his training period, plaintiff became an outside claims representative in defendant's Danvers, Massachusetts, office. Plaintiff's starting salary was $27,000.00 per year.

In December 1989, plaintiff was promoted to the position of serious bodily injury claims representative. This promotion involved an increase in salary. In April 1990, plaintiff was promoted once again, this time to the position of Technical Specialist. Once again, this promotion involved an increase in salary.

In January 1990, plaintiff informed Donald Johnson, defendant's Danvers office manag-

er, of his desire to transfer to another office. In particular, plaintiff expressed his interest in the Atlanta office or another office in the south. Additionally, plaintiff notified defendant's Atlanta office manager, Douglas R. Granberry, of his desire to transfer to that office and requested that Granberry keep him informed regarding any openings in the Atlanta office. At the time plaintiff informed Johnson of his desire to transfer, Johnson expressed reticence to grant such a transfer based upon his desire to keep plaintiff in the Danvers office.

In July 1990, plaintiff visited defendant's Atlanta office while on vacation. Plaintiff discovered that the Atlanta office had an opening for an individual in the position of Litigation Technical Specialist. One of the requirements for the position was a minimum of five years experience in the management of claims and claims litigation.

Plaintiff asked the office receptionist about the position. The individual informed plaintiff that defendant desired to fill the position with an internal candidate. Plaintiff then informed the receptionist that he was in fact an employee with defendant. The receptionist then informed plaintiff that the period for applications by internal candidates had expired; but, pursuant to company policy, he could still submit his application and be considered along with the external candidates.

Plaintiff applied for the position. Despite concerns about plaintiff's apparent lack of experience, Granberry interviewed plaintiff for the position on July 3, 1990. During the course of this interview, information provided by plaintiff confirmed the fact that he lacked the five year experience requirement. The Atlanta position was eventually awarded to an external candidate, Phillip Krajec, a white male.

Plaintiff subsequently applied for a supervisor position in the Danvers office. Maureen Mullins, a white female, was eventually selected for this position.

In April 1990, plaintiff received a formal annual performance review in which he rated as at least an average performer. After Susan Lyle became plaintiff's direct supervisor in July 1990, plaintiff received two additional performance reviews. In September 1990, plaintiff was noted as still performing in at least a satisfactory manner. In November 1990, some deficiencies were noted in plaintiff's performance. These two informal reviews of plaintiff's performance, however, had absolutely no effect on plaintiff's pay, benefits, or employment status.

On October 30, 1990, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter EEOC) alleging that he was denied both the Atlanta position and the Danvers supervisor position based upon his race (African American). On December 12, 1990, plaintiff filed a second charge of discrimination with the EEOC alleging that his poor November 1990 performance review was in retaliation for his earlier filed EEOC charge.

In December 1990, plaintiff suffered injuries in an automobile accident and subsequently was absent from work with defendant. On January 29, 1991, plaintiff began work with the New Orleans City Attorney's Office in New Orleans, Louisiana. Shortly thereafter, plaintiff notified defendant of his resignation of employment.

Mention should be made of at least one other event relevant to plaintiff's claims. Following his 1989 graduation from Southern University Law School in Louisiana, plaintiff unsuccessfully sat for the Louisiana State Bar Exam. Plaintiff, however, passed this examination on his second attempt after beginning his employment with defendant. In recognition of plaintiff's achievement, the Danvers office had a small celebration. During the course of this office party, Johnson stated that despite plaintiff's accomplishment, he was "still a coon ass."[1]

After exhausting his administrative remedies, plaintiff filed a complaint in the United States District Court for the Eastern District of Louisiana on December 18, 1992, alleging violations of Title VII of the Civil Rights Act

---

1. Apparently, the term "coon ass" is generally considered a perjorative reference to any individual of Cajun background. The use of this term in the context of the present case is discussed further below.

of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a; 42 U.S.C. § 1981; 42 U.S.C. § 1983; and the Fourteenth Amendment to the United States Constitution. In his complaint, plaintiff alleges the same facts contained within his EEOC charges of discrimination. Additionally, plaintiff alleges that he was forced to work "in a place" and "under conditions" of bias and prejudice among his co-workers and supervisors. Plaintiff further alleges that he was treated differently than similarly situated non-African American employees, particularly with regard to transfers, promotions, and job assignments. Finally, plaintiff alleges that he received pay which was far below the market average for insurance claims representatives and less than similarly situated white employees.

On May 13, 1993, plaintiff's employment discrimination action was transferred to the United States District Court for the Northern District of Georgia. This court now considers defendant's motion for summary judgment. For purposes of clarity, each of plaintiff's claims is discussed separately below.

### TITLE VII

As noted above, plaintiff's complaint raises a number of discrimination claims not contained in either of his EEOC charges of discrimination. Additionally, plaintiff appears to raise through his deposition testimony and his response to defendant's motion for summary judgment a claim of constructive discharge. (Deposition of Kenneth Plaisance, hereinafter Plaisance Dep., p. 144). Defendant argues that because these claims are outside of the scope of plaintiff's EEOC charges, summary judgment in favor of defendant is appropriate with regard to these claims. For the reasons set forth below, the undersigned Magistrate Judge agrees.

 It is well established that before initiation of a Title VII lawsuit, a plaintiff must first file a charge alleging discrimination with the EEOC within 180 days after the alleged discrimination occurred. *Harris v. Norfolk & W.R. Co.*, 616 F.2d 377, 379 (8th Cir.1980). A Title VII plaintiff is required to exhaust administrative remedies before filing suit. This administrative remedy prerequi-

site is mandatory, and may not be sidestepped by a plaintiff. *East v. Romine, Inc.*, 518 F.2d 332, 335 (5th Cir.1975).

 While there may be some liberality in the interpretation of administrative prerequisites since EEOC charges are usually filed by lay persons, the scope of a complaint is not to be extended beyond the scope of the "EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). As held by the Fifth Circuit Court of Appeals in *Sanchez* held:

> The logic of this rule is inherent in the statutory scheme of Title VII. A charge of discrimination is *not* filed as a preliminary to a lawsuit. On the contrary, the purpose of the charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC. Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law. Only if the EEOC *fails* to achieve voluntary compliance will the matter ever become the subject of court action.... Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

*Id.*

 Under Title VII's comprehensive administrative scheme, the EEOC "should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promotion of conciliation efforts." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir.1983). Thus, a plaintiff must fulfill the statutory prerequisite of filing a timely charge of discrimination with the EEOC before a lawsuit can be instituted. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Jackson v. Seaboard Coast Line Railroad Co.*, 678 F.2d 992 (11th Cir.1982); *Buffington v. General Time Corp.*, 677 F.Supp. 1186, 1192 (M.D.Ga.1988). "[A]n aggrieved em-

ployee may not bypass the administrative process with a direct appeal to the courts." *Buffington,* 677 F.Supp. at 1192; *Beverly v. Lone Star Lead Constr. Corp.,* 437 F.2d 1136, 1139–40 (5th Cir.1971); *Eastwood v. Victor Temporaries,* 441 F.Supp. 51, 52 (N.D.Ga. 1977).

■ The standard for determining whether claims omitted from the EEOC charge yet subsequently raised in a lawsuit may be maintained in the lawsuit is whether the subsequently raised claims are "reasonably related" to the original claims raised in the EEOC charge. *Sanchez,* 431 F.2d at 466; *Evans,* 696 F.2d at 929. If the subsequently raised claims do not meet this test, the district court is precluded from hearing them. *Buffington,* 677 F.Supp. at 1192; *Clements v. H. Goodman & Sons, Inc.,* 25 Fair Empl. Prac. Cas. (BNA) 511, 512–13, 1981 WL 161 (N.D.Ga.1981).

■ After careful consideration, the undersigned finds that the additional claims raised by plaintiff in his complaint and his deposition are not sufficiently "reasonably related" to the claims raised in his EEOC charges to merit their consideration. Consideration of these claims on their merits would undermine the goal of voluntary reconciliation embodied by Title VII. Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED as it relates to any and all Title VII claims not included within plaintiff's EEOC charges of discrimination.

■ A Title VII plaintiff may demonstrate discriminatory intent through either direct or indirect evidence. Direct evidence consists of the actions or remarks of an employer reflecting a discriminatory attitude. *Wall v. Trust Company of Georgia,* 946 F.2d 805, 809–10 (11th Cir.1991); *Hill v. Metropolitan Atlanta Rapid Transit Authority,* 841 F.2d 1533, 1539 (11th Cir.1988), *modified,* 848 F.2d 1522 (11th Cir.1988). *See also, Bell v. Birmingham Linen Service,* 715 F.2d 1552, 1556 (11th Cir.1983), *cert. denied,* 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). Indirect evidence may be demonstrated through the framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). For example, an individual may produce indirect evidence of a discriminatory failure to hire by establishing that he is a member of a protected group and that he "applied for an available position for which [he] was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094. This framework, however, is flexible, and can be shaped to fit employment practices other than failure to hire.

■ If a plaintiff presents direct evidence of discrimination, the burden of proof shifts to defendant to establish that it would have reached the identical employment decision absent unlawful considerations. *See, Wall,* 946 F.2d at 810 (*citing, Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

■ Conversely, where the plaintiff has established a *prima facie* case of discrimination through indirect evidence a burden of production shifts to the employer "to articulate some legitimate, non-discriminatory reason for the employee's rejection." *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. If the defendant carries this burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were merely pretexts for discrimination. *Id.* at 804, 93 S.Ct. at 1825; *Wall,* 946 F.2d at 809; *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1142 (11th Cir.1983). If the trier of fact rejects defendant's proffered reason as incredible, this rejection, coupled with the elements of plaintiff's *prima facie* case, may alone support a finding of pretext. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993).

■ The establishment of a *prima facie* case gives rise to a rebuttable presumption that the employer unlawfully discriminated against the plaintiff. *Burdine,* 450

U.S. at 254, 101 S.Ct. at 1092; *Thompkins v. Morris Brown College,* 752 F.2d 558, 561 (11th Cir.1985). In evaluating whether a plaintiff has satisfied the initial burden of a *prima facie* case, the central inquiry is whether the circumstantial evidence presented is sufficient to create an inference, *i.e.,* a rebuttable presumption, that the employer's personnel decision was based on impermissible considerations. *Furnco Construction Co. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977). *See also, Lee v. Russell County Bd. of Educ.,* 684 F.2d 769, 773–75 (11th Cir.1982), *appeal after remand,* 744 F.2d 768 (11th Cir.1984).

## A. The Atlanta Position.

 Plaintiff alleges that defendant's selection of Krajec instead of plaintiff for the Atlanta Litigation Technical Specialist position was based at least in part upon plaintiff's race in violation of Title VII. In order to establish his *prima facie* case of discrimination in promotion, plaintiff must establish: (1) he is a member of a protected class; (2) he was qualified for the position for which he applied; (3) he was rejected despite his qualifications; and (4) an equally or less qualified individual outside of his protected class was selected for the challenged promotion. *See, e.g., Wu v. Thomas,* 847 F.2d 1480, 1483 (11th Cir.1988), *cert. denied, Wu v. Bd. of Trustees,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989); *Perryman v. Johnson Products, Inc.,* 698 F.2d 1138, 1142 n. 7 (11th Cir.1983). For the reasons set forth below, the undersigned finds that plaintiff has failed to produce at least some evidence tending to establish each of the required elements of his *prima facie* case, and that summary judgment in favor of defendant is therefore appropriate with regard to this claim.

It is undisputed that plaintiff is a member of a protected class, that he applied for the Atlanta position, and that he was rejected for this promotion. Plaintiff, however, has failed to produce any evidence which would tend to support his claim that he was qualified for the position for which he applied. Likewise,

plaintiff has failed to produce any evidence which would tend to support his claim that Krajec was equally or less qualified for the position in question.

Plaintiff admits that one of the requirements for the Atlanta position was a minimum of five years experience in the management of claims and the litigation of claims. (Plaisance Dep., pp. 100–101, 108). It is undisputed that plaintiff failed to meet this experience requirement. (Plaisance Dep., pp. 100–101, 108; Affidavit of Douglas R. Granberry, hereinafter Granberry Aff., ¶¶ 4–5; Affidavit of Thea C. Jones, hereinafter Jones Aff., ¶¶ 10–11). Accordingly, the undersigned finds that plaintiff has failed to produce any evidence upon which a reasonable trier of fact could base a determination that plaintiff has met his burden of establishing that he was qualified for the position in question. Accordingly, as plaintiff has failed to establish his qualifications by any evidence, defendant is entitled to summary judgment on this claim. *See, Ferguson v. Veterans Administration,* 723 F.2d 871, 873 (11th Cir.1984), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984).

Additionally, plaintiff has failed to produce any evidence which would tend to support his allegation that Krajec was less qualified for the position. In fact, plaintiff admits that he knows nothing of Krajec's qualifications for the position in question. (Krajec's Dep., pp. 102–103). Accordingly, plaintiff has offered absolutely no evidence which would support a reasonable trier of fact's determination that Krajec was in fact equally or less qualified for the position.

 The undersigned notes that in his response to defendant's motion, plaintiff makes several arguments in favor of rejecting defendant's motion. First, plaintiff challenges defendant's decision based upon Granberry's failure to notify him of an opening in the Atlanta office so that he could apply along with the internal candidates. Plaintiff, however, admits that no formal mechanism existed for inter-office job posting with defendant. (Plaisance Dep., pp. 105–106, 118). Furthermore, plaintiff has not produced any evidence suggesting that such information was provided to individuals outside of his

protected class who were seeking similar transfers. Additionally, plaintiff has not produced any evidence which would tend to suggest that his "insider" status would somehow overcome his lack of qualifications for the position. Instead, plaintiff simply states that defendant should have had a preference for internal candidates and that this preference would support his selection over a more qualified external candidate. (Plaisance Dep., p. 107).

As noted by the Eleventh Circuit Court of Appeals in *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir. 1984), "Title VII is not a shield against harsh treatment at the workplace." (*quoting, Jackson v. Killeen,* 654 F.2d 1181, 1186 (5th Cir.1981). Instead, a claim of Title VII discrimination must fall absent direct or circumstantial evidence of discriminatory intent. *Id.* Accordingly, the undersigned finds that this argument does not support plaintiff's position.

 Additionally, plaintiff suggests in his deposition that the five year experience requirement has a disparate impact on minority applicants and was perhaps set in place for that very purpose. (Plaisance's Dep., p. 109). Plaintiff's argument on this point, however, consists of nothing more than conclusory allegations and is therefore inappropriate to overcome defendant's motion for summary judgment. *Carter v. Miami, supra.* Specifically, plaintiff has failed to produce any evidence which would tend to establish that the challenged requirement results in the selection of individuals in a "significantly discriminatory pattern." Accordingly, plaintiff has failed to establish a *prima facie* case of disparate impact discrimination. *See, Dothard v. Rawlinson,* 433 U.S. 321, 329, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977). Also, as plaintiff has failed to allege disparate impact discrimination in his complaint, this court should not consider such a claim at this point. *Wu,* 847 F.2d at 1484.

 Finally, the undersigned notes that plaintiff has failed to produce any direct evidence of discrimination with regard to the challenged Atlanta promotion decision. Plaintiff states that the only allegedly racial comment made by defendant's agents was Johnson's "coon ass" comment made at plaintiff's office party. It is undisputed that Granberry, and not Johnson, was responsible for the selection of Krajec instead of plaintiff for the Atlanta position. (Granberry Aff., ¶ 3; Affidavit of Donald A. Johnson, hereinafter Johnson Aff., ¶ 8). As such, Johnson's statement is insufficient to establish direct evidence of discrimination. *See, e.g., Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion); *Grigsby,* 821 F.2d at 596.

For the reasons set forth above, the undersigned Magistrate Judge finds that plaintiff has failed to establish either direct or indirect evidence of discrimination under either the disparate treatment or disparate impact Title VII schemes. Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED as it relates to this particular claim.

B. *The Danvers Position.*

 Plaintiff's challenge to his failure to obtain the Danvers supervisor position is haunted by the same deficiency in that plaintiff has failed to produce any evidence which would tend to support his allegation that Mullins was either equally or less qualified. Instead, plaintiff once again admits that he has no knowledge or evidence with regard to Mullins' qualifications. (Plaisance's Dep., pp. 131–133, 164–165). Accordingly, the undersigned finds that plaintiff has failed to produce at least some probative evidence tending to establish each element of his *prima facie* case and has therefore failed to produce sufficient indirect evidence to allow him to survive defendant's motion for summary judgment.

 Additionally, the undersigned notes that Johnson's alleged "coon ass" comment fails to establish some direct evidence of discrimination allowing plaintiff to survive defendant's motion for summary judgment.[2]

---

**2.** Johnson flatly denies having made this comment. (Johnson Aff., ¶ 15). For purposes of

considering the merits of defendant's motion for

First, it is not at all clear that this comment referred to plaintiff's race as an African American. (Plaisance Dep., pp. 80–81). It is clear, however, that this isolated comment is the only statement by defendant or its agents which plaintiff refers to as support for his direct evidence claim. (Plaisance Dep., pp. 83–84). Just as statements by non-decision makers are insufficient to establish direct evidence of discrimination, isolated or stray comments made by the actual decision maker but completely unrelated to the challenged employment action do not constitute direct evidence of discrimination. *See, e.g., Price Waterhouse v. Hopkins, supra.*

For the reasons set forth above, the undersigned Magistrate Judge finds that plaintiff has failed to produce evidence which would allow a reasonable trier of fact to find that plaintiff had established discrimination through either direct or indirect evidence. Accordingly, the undersigned RECOMMENDS that defendant's motion for summary judgment be GRANTED as it relates to this claim.

### C. *Retaliatory Performance Rating.*

■ The *McDonnell Douglas* framework for evaluating claims of Title VII discrimination has been set forth at great lengths above. Courts have established a similar three-tier framework for evaluating claims of retaliation under Title VII. Plaintiff is first required to establish a *prima facie* case of retaliation. Specifically, plaintiff must establish that (1) he has engaged in statutorily protected behavior; (2) the employer has taken an adverse employment action; and (3) a causal link exists between plaintiff's protected activity and the employer's conduct. *Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1520 (11th Cir.1991); *Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 600–601 (11th Cir.1986); *McCollum v. Bolger,* 794 F.2d 602 (11th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987); *Doyal v. Marsh,* 777 F.2d 1526, 1534 (11th Cir. 1985); *Hamm v. Members of Board of Regents,* 708 F.2d 647, 654 (11th Cir.1983); *Canino v. United States EEOC,* 707 F.2d 468, 471 (11th Cir.1983).

■ As noted above, plaintiff has clearly established that he is a member of a protected class. However, plaintiff has failed to establish any evidence tending to support the remaining two elements of his *prima facie* case. The specific deficiencies of plaintiff's evidence are discussed below.

■ As noted above, an essential element of plaintiff's *prima facie* case of retaliation is the establishment of some evidence that he has been subject to an adverse employment action. This element requires at least some showing of a negative impact upon plaintiff. Such a result is clearly indicated by the Eleventh Circuit Court of Appeals' decision in *Morgan v. City of Jasper,* 959 F.2d 1542, 1547 (11th Cir.1992), in which the court restates this element as a requirement that plaintiff demonstrate he "was disadvantaged by an action of the employer simultaneously with or subject to [his protected activity]." (*Quoting, Whatley v. MARTA,* 632 F.2d 1325, 1328 (5th Cir.1980)). *See also, Jordan v. Wilson,* 851 F.2d 1290, 1292–93 (11th Cir. 1988).

Defendant argues that the challenged November 1990 evaluation was simply an informal review that had no affect upon plaintiff's employment or compensation. (Affidavit of Susan Lyle, hereinafter Lyle Aff., ¶¶ 5, 9). Plaintiff states that he is unaware of any difference between formal and informal evaluations by defendant. (Plaisance Dep., p. 76). Plaintiff does admit, however, that this negative evaluation had absolutely no effect upon his employment or compensation. (Plaisance Dep., pp. 138–39). As plaintiff has failed to establish a "materially adverse change" in his employment by any probative evidence, the undersigned finds that plaintiff has failed to satisfy the adverse employment action element of his *prima facie* case. *See also, Crady v. Liberty National Bank & Trust Co. of Indiana,* 993 F.2d 132, 135 (7th Cir.1993); *Coney v. Department of Human Resources of the State of Georgia,* 787 F.Supp. 1434, 1442 (M.D.Ga.1992).

■ Assuming arguendo, however, that plaintiff had established the presence of

summary judgment, however, the undersigned assumes that this comment was made.

an adverse employment action, plaintiff has still failed to establish any evidence which would tend to establish a causal link between his filing of two EEOC charges and his negative evaluation. It is the established precedent of this circuit that whenever an employee alleges that an adverse employment action has been taken in reprisal for the employee engaging in protected activity, it is the burden of the employee to prove that the employer had actual knowledge of such activity. *See, EEOC v. Carolina Freight Carriers Corp.*, 723 F.Supp. 734, 748 (S.D.Fla.1989). *See also, Webster v. Department of the Army*, 911 F.2d 679, 689 (D.C.Cir.1990), *cert. denied*, 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). Plaintiff, however, states that he does not know if Lyle was aware of his filing of the EEOC charges at the time she completed his challenged performance evaluation and that she may have in fact been unaware of his protected activity. (Plaisance Dep., pp. 138, 173). The undisputed testimony of both Johnson and Lyle establish that they had no knowledge of plaintiff's EEOC charges until after he had resigned his employment. (Johnson Aff., ¶ 12; Lyle Aff., ¶ 11).

Rather than dispute this fact, plaintiff simply suggests through conclusory allegations in his deposition that Lyle was somehow directed by her supervisors to conduct the challenged evaluation. As noted above, however, such conclusory allegations are insufficient to overcome defendant's motion for summary judgment. *Carter v. Miami, supra.* Furthermore, plaintiff has produced absolutely no evidence that Lyle's supervisors were aware of his protected activity. Accordingly, this argument is of no support to plaintiff's claim.

Based upon the above facts, the undersigned Magistrate Judge finds that plaintiff has failed to produce any probative evidence tending to establish the required element of causation. Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED as it relates to this claim. In summary, the undersigned finds that plaintiff has failed to establish evidence supporting a *prima facie* case with regard to

any of his Title VII claims. Accordingly, the undersigned RECOMMENDS that defendant's motion for summary judgment be GRANTED as it relates to each of these claims.

## 42 U.S.C. § 1981 AND THE CIVIL RIGHTS ACT OF 1991

A Section 1981 claim concerns discrimination in the making and enforcement of contracts. The code at 42 U.S.C. § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The United States Supreme Court imposed limitations on Section 1981 actions in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). In *Patterson*, the Supreme Court noted the narrow wording of Section 1981 and held that:

> Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts.... [T]he right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract has been established....

*Id.* 491 U.S. at 176–77, 109 S.Ct. at 2372–73. Accordingly, the Supreme Court denied plaintiff's racial harassment claim as outside the scope of Section 1981.

In *Patterson v. McLean Credit Union* the Supreme Court ruled that post-contract formation allegations of racially discriminatory conduct are not actionable under 42 U.S.C. § 1981, since § 1981 only guards against racial discrimination in the "making" of contracts and the right to "enforce" the contract through legal processes. *Patterson*, 491 U.S. at 176–79, 109 S.Ct. at 2372–2374. In order to state a claim cognizable under § 1981,

"the plaintiff's claim must involve improper 'conduct at the initial formation of the contract' or 'conduct which impairs that right to enforce contract obligations through legal process.'" *Lavender v. V & B Transmissions & Auto Repair*, 897 F.2d 805, 807 (5th Cir.1990) (*quoting Patterson*, 491 U.S. at 179, 109 S.Ct. at 2374).

According to the *Patterson* Court, in the employment context, post-formation conduct which by its nature involved "in effect the opportunity to enter into a new contract with the employer" was actionable under 42 U.S.C. § 1981. *Patterson*, 491 U.S. at 185, 109 S.Ct. at 2377. A claim that an employer failed to promote an employee because of the employee's race is within the reach of § 1981 when the promotion "rises to the level of an opportunity for a new and distinct relation between employee and employer." *Id.*

As the Eleventh Circuit stated in *Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1520 (11th Cir.1991):

Patterson's discussion of § 1981 makes the focus of the test fairly clear: a plaintiff's failure-to-promote claim is cognizable under § 1981 if the promotion would have entailed a new contractual relationship between the employee and the employer, "involving in effect the opportunity to enter into a new contract with the employer." (Footnote omitted).

*See also, Harrison v. Associates Corp. of North America*, 917 F.2d 195, 198 (5th Cir. 1990).

While the Supreme Court's decision in *Patterson* may have made the focus of the test to be applied by the circuit courts clear, it has done little to guide the application of this test to specific fact situations. As noted in *Guliford v. Beech Aircraft Corp.*, 768 F.Supp. 313 (D.Kan.1991), some courts have found that virtually any change in the employment relationship will meet the "new contract" test of *Patterson* while other courts have held that "the change in the employment relationship must be a 'fundamental' one as distinguished from garden-variety or routine advancements or raises." *Guliford*, 768 F.Supp. at 318–319 (collecting cases).

It appears that the stricter interpretation of *Patterson* has been adopted by the Eleventh Circuit. In *Wall v. Trust Company of Georgia*, 946 F.2d 805 (11th Cir.1991), the court rejected plaintiff's contention that a promotion from the position of customer service representative to that of tax analyst rose to the level of change required by *Patterson* even though there was a significant change in job duties. In *Wall*, the court noted that:

The court stated in *Patterson* that "only where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under section 1981," citing *Hishon v. King and Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) (refusal of law firm to accept associate into partnership) (Title VII). 491 U.S. at 185, 109 S.Ct. at 2377. Effectively, *Patterson* held that in the promotion context, a new contract is not made for purposes of section 1981 unless such a new and distinct relationship would flow from the promotion. *Bennun v. Rutgers State Univ.*, 941 F.2d 154 (3rd Cir.1991) (denying relief for nonpromotion from tenured associate professor to full professor based on application of *Patterson* test).

We disagree with *Wall* that the promotion here rises above the bright line of a relation sufficiently "new and distinct" to qualify under the *Patterson* test. *See Weaver v. Casa Gallardo, Inc.*, 922 F.2d 1515, 1519–20 (11th Cir.1991) (remanding to apply "new contract" test). The customer service representative [**8] and tax analyst positions are both nonexempt salaried jobs, are relatively equal in grade (118 versus 119), provide identical benefits and compensation, and are covered by the same policies and procedures.

*Wall*, 946 F.2d at 808.

After *Wall*, however, the specific question of whether the addition of certain supervisory duties constitutes a sufficient change in the employment relationship to trigger a § 1981 suit is not entirely resolved. One reason that the court rejected plaintiff's claim was that "the change would not have involved the elevation of Wall to a management position which would be considered a

new contract, analogous to the change in status in *Hishon*, cited by means of example in *Patterson.*" *Wall*, 946 F.2d at 808. In support of this proposition, the court cited two cases: *Harrison v. Associates Corp. of North America*, 917 F.2d 195 (5th Cir.1990) and *Mallory v. Booth Refrigeration Supply Co., Inc.*, 882 F.2d 908 (4th Cir.1989). Because it appears that the Eleventh Circuit Court of Appeals has determined that the bright line of *Patterson* falls somewhere between these two fact situations, a brief discussion of these decisions is instructive in the present case.

In *Mallory v. Booth*, the denial of a promotion which would have elevated plaintiff from the position of clerk to supervisor was held to create a new contractual relationship for purposes of applying § 1981. *Mallory*, 882 F.2d at 910. The court's reliance on *Harrison*, however, would seem to place severe restrictions on the general principle that the addition of supervisory duties alone constitutes a change in employment relationships significant to trigger a § 1981 suit. In *Harrison*, plaintiff was denied a promotion from CRT operator to CRT lead operator. In rejecting plaintiff's claim that this denial of promotion constituted a violation of § 1981, the court stated that while the lead operator was responsible for assigning the priority to various work and in assisting other operators as needed, lead operators were not automatically entitled to a raise in pay and neither did they have general supervisory duties such as hiring and firing of other employees. *Harrison*, 917 F.2d at 196.

In the present case, plaintiff has produced no evidence that either the Atlanta position or the Danvers supervisor position would have afforded him "an opportunity for a new and distinct relationship" with his employer. Instead, the undersigned notes that the evidence in this case tends to establish a certain similarity between plaintiff's position as Technical Specialist and the Atlanta position of Litigation Technical Specialist. Finally, the undisputed evidence in this case establishes that the Danvers supervisor position was equivalent to plaintiff's position in both salary grade and actual compensation, and that Mullins actually had a smaller salary in the supervisor position that plaintiff had in his Technical Specialist position. (Johnson Aff., ¶ 11). Accordingly, the undersigned finds that these two claims are insufficient as a matter of law to support a 42 U.S.C. § 1981 claim. Additionally, plaintiff's retaliation claim is clearly insufficient to support a 42 U.S.C. § 1981 claim. *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527 (11th Cir.1990), *cert. denied*, 498 U.S. 943, 111 S.Ct. 353, 112 L.Ed.2d 317 (1990).

Because the undersigned finds that plaintiff's failure to promote claims and retaliation claim may not properly be brought under 42 U.S.C. § 1981 as originally enacted, defendant's motion for summary judgment on this issue should be granted unless a determination is made that the provisions of the Civil Rights Act of 1991 which enlarge the scope of Section 1981 claims should be applied retroactively to the events referred to in plaintiff's complaint, events occurring prior to the enactment of the 1991 Act.

The Eleventh Circuit Court of Appeals addressed the question of the potential retroactive application of the Civil Rights Act of 1991 in *Baynes v. AT & T Technologies, Inc.*, 976 F.2d 1370 (11th Cir.1992). In *Baynes*, the court noted special difficulties in determining the potential retroactive application of such statutes absent clear legislative guidance. After finding that the issue of retroactivity could not be decided based upon the legislative history of the Civil Rights Act of 1991, the court stated that:

> Supreme Court precedent offers little more help than does the Act and its legislative history. The Court has so far declined to resolve the conflict in its own rules of presumptions of statutory retroactivity. *Compare Bradley v. School Board of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (presumption of retroactivity), with *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (presumption of prospectiveness); *see also, Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) (declining to resolve the "apparent tension" be-

tween the *Bradley* and *Bowen* lines of cases).

*Baynes,* 976 F.2d at 1372–73.

The court quickly noted that under the stricter rule of *Bowen,* the 1991 Civil Rights Act was clearly not retroactive in effect, as the cloudy legislative history was insufficient to overcome the presumption against retroactivity. *Baynes,* 976 F.2d at 1373. The court, however, noted that historically it had adhered to the more liberal rule of interpretation contained within the *Bradley* line of cases. Ultimately, this distinction was meaningless as the court determined that even given the *Bradley* presumption of retroactivity, the Civil Rights Act of 1991 has only prospective application.

As noted by the court, the *Bradley* approach presumes retroactive application of a statute "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley,* 416 U.S. at 711, 94 S.Ct. at 2016. The court then continued, opining that:

> To determine whether "manifest injustice" would result, we look at three elements: "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights."

*Baynes,* 976 F.2d at 1373 (citing *Bradley,* 416 U.S. at 717, 94 S.Ct. at 2019). After careful consideration of the nature of discrimination suits, the court held that each of these three elements argued for only prospective application of the Civil Rights Act of 1991.

As to the first element, the court noted that employment discrimination cases are inevitably private disputes between individuals and not matters of "great national concern." *Baynes,* 976 F.2d at 1374. Therefore, the court found that the first element of the *Bradley* test weighed in favor of only prospective application of the Act.

As to the second prong of the *Bradley* analysis, the court noted that the Civil Rights Act of 1991 created both remedial and substantive changes to the provisions of 42 U.S.C. § 1981. Given this fact, the court noted that "[b]ecause the Act changes substantive obligations as well as remedial or

procedural rights, however, we believe the nature of the parties' rights weighs against retroactivity in this case." *Baynes,* 976 F.2d at 1375 (*citing, United States v. Fernandez–Toledo,* 749 F.2d 703, 705 (11th Cir.1985)). Specifically, the court referred to the 1991 Act's extension of the coverage of 42 U.S.C. § 1981 as a plainly substantive change. Referring to the Seventh Circuit Court of Appeals' decision in *Luddington v. Indiana Bell Telephone Co.,* 966 F:2d 225, 229 (7th Cir. 1992) (Posner, J.), the court stated that "[w]e agree with the Seventh Circuit that, however characterized, extension of Section 1981 liability mandates a substantial increase in employer's level of care that forces them to adjust their behavior in response to the statutory change." *Baynes,* 976 F.2d at 1374 (n. 5).

This concern expressed by the court spills over into its discussion of the third prong of the *Bradley* analysis. In setting forth the proper framework for analysis of this prong of the *Bradley* test, the court stated that "[t]he third *Bradley* consideration, the effect of the change in law upon the parties' rights, requires that we consider whether retroactive application of the Act unfairly imposes "a new and unanticipated obligation" on the parties." *Baynes,* 976 F.2d at 1375 (*quoting Bradley,* 416 U.S. at 720, 94 S.Ct. at 2021). Specific to the question of the retroactive application of the Civil Rights Act of 1991, the court declared that:

> Although the basic norm of non-discrimination is unchanged by the Act, we believe that imposing potential liability damages for post-hiring behavior under Section 1981, as opposed to the lesser Title VII remedies, would significantly and unfairly have an effect on the parties.

*Baynes,* 976 F.2d at 1375.

Despite the clarity of the court's decision in *Baynes,* this decision is not directly dispositive of the issue of retroactivity in the present case. In *Baynes,* judgment had been entered and an appeal was pending at the time the Civil Rights Act of 1991 became effective. In the present case, plaintiff filed his complaint approximately nine months prior to the effective date of the 1991 Act and alleged discriminatory conduct occurring pri-

or to the adoption of the Act. However, unlike the case in *Baynes*, litigation had not been concluded prior to the effective date of the 1991 Act. In the concluding sections of its opinion, the *Baynes* court stated that:

> In addition, this case has been litigated for two and one-half years through a non-jury trial on the merits, all in reliance on prior law. In circumstances like these, we conclude that the affect of the statutory change strongly mitigates against retroactivity.
> For these reasons, we hold that those parts of the Civil Rights Act of 1991 in controversy in this case do not apply retroactively in cases in which Judgement was entered before the Act's pertinent effective date. Our holding is consistent with those of most of the other circuits that have addressed the retroactivity of the Civil Rights Act of 1991.

*Baynes*, 976 F.2d at 1375.

The *Baynes* court, however, did address the question of retroactivity in other types of cases in the form of a footnote. The court states that "we address no other kinds of cases, but neither do we imply that the Act would apply retroactively in other circumstances." *Baynes*, 976 F.2d at 1372 (n. 1). The question remains, therefore, whether or not the Eleventh Circuit Court of Appeals' decision in *Baynes* may be properly extended to apply to cases filed before the effective date of the 1991 Act, alleging acts of discrimination occurring prior to the 1991 Act's adoption, but remaining open at the time that the Act became law. For the reasons discussed below, the undersigned finds that the decision in *Baynes* is readily applicable in these cases.

First, the undersigned notes that the *Baynes* court's decision that retroactive application of the 1991 Act would "result in manifest injustice" rests largely on the realization that retroactive application would unfairly impact employers in denying them the right to conform their actions to the law in light of expected penalties for non-conformance. In short, retroactive application would deprive employers of the ability to adjust their conduct to differing levels of care created by the new Act. *See, Baynes*, 976 F.2d at 1374 (n. 5). These concerns would be equally applicable in any case where the challenged conduct on the part of an employer occurred prior to the enactment date of the remedial and substantive changes in discrimination law contained within the 1991 Act.

Second, the undersigned notes that the *Baynes* court cited with approval the Seventh Circuit Court of Appeals' decision in *Luddington v. Indiana Bell Telephone Co., supra*. In *Luddington*, the court undertook a fairly exhaustive discussion of the various situations in which a statute might be applied retroactively. The court noted that:

> A statute could be applied (1) to cases filed and completed before the effective date of the statute that arise from acts committed before that effective date, (2) to cases filed before the effective date of the statute, but not completed by that date, that arise from acts committed before that date, (3) to cases filed after the effective date that arise from acts committed before that date, (4) to cases in any of these categories but in which the conduct complained of straddled the effective date of the statute, or (5) only to cases filed after the effective date that arise from acts committed entirely after that date. The first four types of application would be retroactive to varying degrees; the fifth wouldn't be retroactive at all.

*Luddington*, 966 F.2d at 227.

In holding that retroactive application of the 1991 Act in situations where the challenged conduct occurred prior to the effective date of the Act would be unjust, the court stated that:

> It could be argued that since the underlying norm of non-discrimination was not new, employers should not be heard complaining that the norm has now been given teeth. But many of us would squawk very loudly indeed if people with unpaid parking tickets were made retroactively liable to life imprisonment; and in fact such a change although purely remedial would violate the *ex post facto* clause. *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987); *Sequoia Books, Inc. v. Ingemunson*, 901 F.2d 630, 639 (7th Cir.

1990). The amount of care that individuals and firms take to avoid subjecting themselves to liability whether civil or criminal is a function of the severity of the sanction, and when the severity is increased they are entitled to an opportunity to readjust their level of care in light of the new environment created by the change. That is the philosophy behind the *ex post facto* clause but also behind the interpretive principle that presumes that a new civil statute applies only to conduct that occurs after its effective date.

*Luddington,* 966 F.2d at 229. This language, noted with approval by the court in *Baynes,* indicates that the *Baynes* decision properly should be extended to any case in which the challenged employment conduct occurred prior to the effective date of the 1991 Act.

This view of *Baynes* has in fact been adopted by several panels of the Eleventh Circuit Court of Appeals. *See, Curtis v. Metro Ambulance Service, Inc.,* 982 F.2d 472 (11th Cir.1993). *See also, Goldsmith v. Atmore,* 996 F.2d 1155, 1159 (11th Cir.1993); *Vance v. Southern Bell Tel. & Tel. Co.,* 983 F.2d 1573 (11th Cir.1993).

 Based upon careful examination of the factors discussed above, the undersigned agrees with the Honorable Robert H. Hall, United States District Judge, that "[t]he Civil Rights Act of 1991 was signed by the President and became effective on November 21, 1991. It does not apply to cases arising before the effective date of the Act." *James v. American International Recovery, Inc.,* Civil Action No. 1:89–CV–321–RHH, 57 F.E.P. (BNA) 1226, 1991 WL 281734 (N.D.Ga. December 3, 1991).

Based upon the above, the undersigned Magistrate Judge hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED as it relates to plaintiff's claims under 42 U.S.C. § 1981 and the Civil Rights Act of 1991.

### 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT

Plaintiff has brought this employment discrimination action against defendant,

a private insurance company. Plaintiff has suggested absolutely no state action or involvement in the alleged acts of discrimination. Accordingly, the undersigned Magistrate Judge finds that plaintiff has failed to state a claim either under 42 U.S.C. § 1983 or the Fourteenth Amendment to the United States Constitution as a matter of law. *Sofarelli v. Pinellas County,* 931 F.2d 718, 723 (11th Cir.1991). *See also, Golden v. Biscayne Bay Yacht Club,* 521 F.2d 344, 348 (5th Cir.1975); *Corrente v. St. Joseph's Hospital and Health Center,* 730 F.Supp. 493, 500 (N.D.N.Y.1990). Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED with regard to these particular claims as well.

In summary, the undersigned Magistrate Judge hereby RECOMMENDS that defendant's motion for summary judgment be GRANTED in its entirety.

IT IS SO REPORTED AND RECOMMENDED, this 2nd day of March, 1994.