IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 91-4485
_____

BARBARA LANDGRAF,

                                        Plaintiff-Appellant,

versus

USI FILM PRODUCTS,
BONAR PACKAGING, INC., and
QUANTUM CHEMICAL CORPORATION,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

(July 30, 1992)

Before GOLDBERG, HIGGINBOTHAM, and DAVIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Barbara Landgraf brought suit against her employer asserting sexual harassment and retaliation claims under Title VII. After a bench trial, the district court entered judgment in favor of the defendants. Although the district court found that sexual harassment had occurred, it concluded that Landgraf had not been constructively discharged and therefore was not entitled to any relief under Title VII. Landgraf asserts on appeal that the district court clearly erred in finding that she was not constructively discharged and that the district court erred in failing to make factual findings on her retaliation claim. She also argues that she is entitled to nominal damages even if she

is unable to demonstrate a constructive discharge.  Finally, she asserts that the damage and jury trial provisions of the Civil Rights Act of 1991 should be applied retroactively to her case. We affirm the district court's judgment in all respects and find that the Civil Rights Act of 1991 does not apply to this case.

I.

Landgraf worked for USI Film Products in its Tyler, Texas production plant on the 11:00 p.m. to 7:00 a.m. shift.  From September 1984 to January 1986, she was employed as a materials handler operating a machine which produced several thousand plastic bags per shift.  While she worked at the plant, fellow employee John Williams subjected her to what the district court described as "continuous and repeated inappropriate verbal comments and physical contact."  The district court found that this sexual harassment was severe enough to make USI a "hostile work environment" for purposes of Title VII liability.  The harassment was made more difficult for Landgraf because Williams was a union steward and was responsible for repairing and maintaining the machine Landgraf used in her work.

Landgraf told her supervisor, Bobby Martin, about Williams' harassment on several occasions but Martin took no action to prevent the harassment from continuing.  Only when Landgraf reported the harassment to USI's personnel manager, Sam Forsgard, was Williams' behavior investigated.  By interviewing the other female employees at the plant, the investigation found that four

women corroborated Landgraf's reports of Williams engaging in inappropriate touching and three women reported verbal harassment.

Williams denied the charges, contending that "they are all lying." Williams was given a written reprimand for his behavior, but was not suspended, although the written policies of USI list sexual harassment as an action "requiring suspension or dismissal." He was technically transferred to another department, however, USI officials conceded that he would still be in Landgraf's work area on a regular basis. This transfer was not a form of discipline against Williams; as soon as Landgraf resigned he was transferred back to the original department.

The investigation dealt not only with Williams' behavior but also involved questioning employees about their relationship with Landgraf. On January 13, 1986, Forsgard, Wilson, and Martin met with Landgraf. According to Wilson's notes describing the meeting, Forsgard first told Landgraf that her claim had been investigated and that USI had taken the action it deemed appropriate. The meeting then turned to focus on Landgraf's problems in getting along with her co-workers. She was told that she was very unpopular and was "among [her] own worst enemies." When Landgraf asked whether anything was going to happen to Williams she was told that USI had taken what it considered appropriate action and to notify them if Williams attempted to take revenge.

After working just two more shifts, Landgraf left her job at USI. She left a letter addressed to her colleagues stating that "the stress that each one of you help [sic] to put on me, caused me

3

to leave my job." The letter did not refer to the sexual harassment or to Williams by name. Approximately two days later, Landgraf spoke to her supervisor about her decision to resign and specifically attributed it to the harassment by Williams.

## II.

It is uncontested that Barbara Landgraf suffered significant sexual harassment at the hands of John Williams during her employment with USI. This harassment was sufficiently severe to support a hostile work environment claim under Title VII. Meritor Savings Bank, FSB v. Vinson, 106 S.Ct. 2399 (1986). She reported this harassment to her employer through supervisor Bobby Martin on several occasions and no corrective action was timely taken.

Because Landgraf voluntarily left her employment at USI, however, she must demonstrate that she was constructively discharged in order to recover back pay as damages. In order to demonstrate constructive discharge, she must prove that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." Bourque v. Powell Electrical Mfg. Co., 617 F.2d 61, 65 (5th Cir. 1980); Jurgens v. EEOC, 903 F.2d 386, 390-91 (5th Cir. 1990). The district court found that the sexual harassment by Williams was not severe enough that a reasonable person would have felt compelled to resign. This conclusion was strengthened by the district court's finding that at the time Landgraf resigned USI was taking action reasonably calculated to alleviate the harassment. The district court further found that "as evidenced by the language

4

in her resignation letter, Landgraf's motivation for quitting her employment with USI was the conflicts and unpleasant relationships she had with her co-workers."

Landgraf argues first that the district court clearly erred in finding that USI had taken steps reasonably calculated to end the harassment. We disagree. Our review of the district court's factual finding is limited. As the Supreme Court has recently described the scope of our review: "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. Bessemer City, 470 U.S. 564, 573-74 (1985). There was evidence that USI had given Williams its most serious form of reprimand and acted to reduce his contact with Landgraf at the workplace. Landgraf testified that Williams continued to harass her after his reprimand, however, she did not report these incidents to USI before resigning. Title VII does not require that an employer use the most serious sanction available to punish an offender, particularly where, as here, this was the first documented offense by an individual employee. The district court did not clearly err in concluding that USI took steps reasonably calculated to end the harassment.

Landgraf argues that the finding of no constructive discharge was clearly erroneous. We disagree. The district court, after hearing all the testimony in this case, concluded that Landgraf

5

resigned for reasons unrelated to sexual harassment.  The evidence in this case presented two possible reasons for Landgraf's decision to resign:  problems with her co-workers, as evidenced by her note or sexual harassment as stated in conversation with Bobby Martin. Landgraf testified at trial that the sexual harassment was the reason for her resignation.  She also stated that the reference to "the devil [who] has been your leader so far" in her resignation note was actually a reference to Williams.  The district court concluded based upon this testimony and the note itself that the problems with her co-workers actually caused her resignation. Given these two plausible interpretations of the evidence, we must affirm the district court's finding.  Landgraf also asserts that the conflicts she had with her co-workers were as a result of her problems with Williams.  There was conflicting evidence on this question and the district court specifically found that Landgraf's conflict with her co-workers was unrelated to the sexual harassment by Williams.  The district court did not clearly err in finding that Landgraf left her employment at USI for reasons unrelated to sexual harassment.

Moreover, even if the reason for Landgraf's departure was the harassment by Williams, the district court found that, particularly in light of the corrective actions taken by USI immediately before Landgraf resigned, the level of harassment was insufficient to support a finding of constructive discharge. To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a

hostile working environment. Pittman v. Hattiesburg Municipal Separate School District, 644 F.2d 1071, 1077 (5th Cir. 1981) (constructive discharge requires "aggravating factors"). The harassment here, while substantial, did not rise to the level of severity necessary for constructive discharge. Although USI's investigation of this incident may not have been overly sensitive to Landgraf's state of mind, the company had taken steps to alleviate the situation and told Landgraf to let them know of any further problems. A reasonable employee would not have felt compelled to resign immediately following the institution of measures which the district court found to be reasonably calculated to stop the harassment. We cannot say that the district court clearly erred in rejecting the claim of constructive discharge.

III.

Landgraf asserts that the district court erred in failing to make findings of fact and conclusions of law with regard to her retaliation claim against USI. USI argues that no findings on the retaliation claim are necessary because Landgraf failed to prevail on her claim of constructive discharge. We agree.

An adverse negative employment action is a required element of a retaliation claim. Collins v. Baptist Memorial Geriatric Center, 937 F.2d 190, 193 (5th Cir. 1991). The only possible adverse employment action that Landgraf suffered after she complained to Martin about the sexual harassment would be the alleged constructive discharge. Because the district court found that the reason Landgraf resigned her position was her trouble getting along

7

with her co-workers, she cannot prove constructive discharge on the basis of retaliation. As noted above, Landgraf asserts that her troubles with her co-workers were as a result of her complaints about Williams' harassment. However, the district court explicitly found to the contrary and we cannot say that that finding was clearly erroneous. Accordingly, Landgraf's retaliation claim cannot prevail because she suffered no adverse employment action as a result of her complaints. Collins, 937 F.2d at 193.

IV.

Landgraf argues that even if she fails to demonstrate that she was constructively discharged, she may still be awarded nominal damages which would carry with them an award of attorneys' fees. We recognize that some confusion may have arisen from our statement in Joshi v. Florida State Univ., 646 F.2d 981, 991 n.3 (5th Cir. Unit B 1981), indicating in dicta that in some cases an employee who suffered from illegal discrimination but was ineligible for back pay might be entitled to nominal damages. Several circuit courts have explicitly held that such nominal damages are available under Title VII in some cases. Huddleston v. Roger Dean Chevrolet, 845 F.2d 900, 905 (11th Cir. 1988); Baker v. Weyerhaeuser Co., 903 F.2d 1342 (10th Cir. 1990). See also Katz v. Dole, 709 F.2d 251, 253 n.1 (4th Cir. 1983); T & S Service Associates v. Crenson, 666 F.2d 722, 728 n.8 (1st Cir. 1981). Only the Seventh Circuit has directly rejected the award of nominal damages as relief in Title VII cases. Bohen v. City of East Chicago, Indiana, 799 F.2d 1180, 1184 (7th Cir. 1986).

We conclude that the <u>Bohen</u> court's rejection of nominal damages as a Title VII remedy is the correct interpretation of the statutory scheme.[1]  Title VII provides that where a court finds that an employer has engaged in unlawful employment practices, it may order action "which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay, . . .or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g).  We have consistently interpreted this provision to mean that "only equitable relief is available under Title VII."  <u>Bennett v. Corroon & Black Corp.</u>, 845 F.2d 104, 106 (5th Cir. 1988).  Nominal damages such as those awarded in <u>Huddleston</u> and <u>Baker</u> are legal, not equitable relief and are therefore outside the scope of remedies available under Title VII. <u>Bohen</u>, 799 F.2d at 1184 (damages unavailable to redress Title VII violations that do not result in discharge).

Landgraf also asserts that she is entitled to equitable relief in the form of a declaratory judgment, relying on the Eighth Circuit's opinion in <u>Bibbs v. Block</u>, 778 F.2d 1318 (8th Cir. 1985). We conclude that no declaratory judgment is appropriate in this case.  The purpose of equitable relief under Title VII is "to restore the victim of discrimination to fruits and status of employments as if there had been no discrimination." <u>Bennett</u>, 845 F.2d at 106.  Here, because Landgraf voluntarily left her

---

[1]We note, of course that under the amendments to Title VII in the Civil Rights Act of 1991, remedies will no longer be limited to equitable relief.  However, for the reasons discussed below, those amendments do not apply to this case.

employment she was not deprived of any fruits of employment as a result of the sexual harassment. Her argument that she is entitled to a declaratory judgment for purposes of vindication because she prevailed on the issue of whether sexual harassment occurred must also fail. See Laboeuf v. Ramsey, 503 F. Supp. 747 (D. Mass. 1980) (allowing declaratory judgment for purposes of vindication). USI did not dispute at trial the fact of Landgraf's sexual harassment. The only issues disputed were the propriety of USI's reaction to the harassment and Landgraf's reason for resigning. Landgraf did not prevail on either of these issues and the district court did not err in refusing to grant a declaratory judgment.

V.

Finally, we address the question of whether any provisions of the Civil Rights Act of 1991 apply to this case. Two provisions of the Act would affect this case if applicable: the addition of compensatory and punitive damages and the availability of a jury trial. Civil Rights Act of 1991, Pub. L. No. 102-166, § 102(a)(1), 102(c), 105 Stat. 1072-73 (1991).

We recently addressed the issue of the Act's retroactivity in Johnson v. Uncle Ben's, Inc., ____ F.2d ____, 1992 WL 147678 (5th Cir. July 1, 1992), where we joined the other circuit courts which have ruled on the issue in holding that § 101(2)(b) of the Act does not apply to conduct occurring before the effective date of the Act. See Luddington v. Indiana Bell Telephone Co., ___ F.2d ___, 1992 WL 130393 (7th Cir. June 15, 1992); Fray v. Omaha World Herald Co., 960 F.2d 1370 (8th Cir. 1992); Vogel v. City of Cincinnati,

10

959 F.2d 594 (6th Cir. 1992). We need not repeat here our discussion of the legislative history of the Act. For the reasons explained in Johnson, we conclude that there is no clear congressional intent on the general issue of the Act's application to pending cases. We must therefore turn to the legal principles applicable to statutes where Congress has remained silent on their retroactivity.

As we noted in Johnson the legal principles surrounding the retroactive application of statutes are somewhat uncertain in light of the Supreme Court's decisions in Bradley v. Richmond School Board, 416 U.S. 696 (1974) and Bowen v. Georgetown University Hospital, 109 S.Ct. 468 (1988). We need not resolve the recognized tension between the Bradley and Bowen cases, however, in order to resolve the issue facing us here. See Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 837, 110 S.Ct. 1570, 1572 (1990). Even under the standard set forth in Bradley we conclude that these two provisions of the Act should not be applied retroactively to this case.

The rule set forth in Bradley is that a court must "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." Bradley, 416 U.S. at 711. In determining whether retroactive application of a statute will wreak injustice, we consider "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." Belser v. St. Paul

11

Fire and Marine Ins. Co., ___ F.2d ___ (5th Cir. July 9, 1992), citing Bradley, 416 U.S. at 717, 94 S.Ct. at 2019.

We turn first to the provision allowing either party to request a jury trial. When this case was tried in February 1991, the district court applied the law in effect at that time when it conducted a bench trial on the Title VII claims. We are not persuaded that Congress intended to upset cases which were properly tried under the law at the time of trial. See Bennett v. New Jersey, 105 S.Ct. 1555 (1985) (Court would not presume that Congress intended new grant regulations to govern review of prior grants). To require USI to retry this case because of a statutory change enacted after the trial was completed would be an injustice and a waste of judicial resources. We apply procedural rules to pending cases, but we do not invalidate procedures followed before the new rule was adopted. Belser, ___ F.2d ___ at _____.

We now turn to whether the Act's provisions for compensatory and punitive damages apply to pending cases. We conclude that they do not. Retroactive application of this provision to conduct occurring before the Act would result in a manifest injustice. The addition of compensatory and punitive damages to the remedies available to a prevailing Title VII plaintiff does not change the scope of the statute's coverage. That does not mean, however, that these are inconsequential changes in the Act. As Judge Posner notes in Luddington, "such changes can have as profound an impact on behavior outside the courtroom as avowedly substantive changes." Unlike allowing prevailing plaintiffs to recover attorneys' fees as

12

in Bradley, the amended damage provisions of the Act are a seachange in employer liability for Title VII violations. For large employers, the total of compensatory and punitive damage which they are potentially liable can reach $300,000 per claim. Civil Rights Act of 1991, § 102(3)(b)(3).

The measure of manifest injustice under Bradley is not controlled by formal labels of substantive or remedial changes. Instead, we focus on the practical effects the amendments have upon the settled expectations of the parties. There is a practical point at which a dramatic change in the remedial consequences of a rule works change in the normative reach of the rule itself. It would be an injustice within the meaning of Bradley to charge individual employers with anticipating this change in damages available under Title VII. Unlike Bradley, where the statutory change provided only an additional basis for relief already available, compensatory and punitive damages impose "an additional or unforeseeable obligation" contrary to the well-settled law before the amendments. 416 U.S. at 721. We conclude that the damage provisions of the Civil Rights Act of 1991 do not apply to conduct occurring before its effective date.

The judgment of the district court is AFFIRMED.

13