**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 91-5820

ROSE L. VALDEZ,

Plaintiff-Appellant,

VERSUS

SAN ANTONIO CHAMBER OF COMMERCE
and JOSEPH R. KRIER, President, Board
of Directors of the Greater San Antonio
Chamber of Commerce, Etc.,

Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Texas

(September 25, 1992)

Before GOLDBERG, JONES, and DeMOSS, Circuit Judges.

DeMoss, Circuit Judge:

## I. Facts and Procedural History

Rose Valdez (Valdez), a Hispanic female, was employed by the San Antonio Chamber of Commerce (the Chamber) from June 1981 until February 1987. After being at the Chamber for less than a year, the Chamber promoted Valdez from the position of a staff manager in the Urban Affairs Department to Vice President of the Public Affairs Department.

In May 1984, Valdez submitted a proposal to the Chamber, which if accepted, would have resulted in additional job responsibilities and a pay raise. Around this time, the president of the Chamber realigned the Chamber's personnel, which resulted in Valdez's job responsibilities being restricted. Valdez's salary, however, was not reduced. The Chamber fired Valdez in February 1987, allegedly for poor job performance.

In December 1988, Valdez sued the Chamber, the president of the Chamber, and the board of directors of the Chamber, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII), 42 U.S.C. § 1981 (Section 1981), and the Equal Pay Act, 29 U.S.C. § 206(d) (EPA). In her suit, Valdez alleged that the Chamber denied her a promotion and eventually discharged her because of her race, sex, and national origin.

Before trial, the United Stated District Court for the Western District of Texas (USDC) dismissed the board of directors from the suit, granted summary judgment denying Valdez's claim under the EPA, and dismissed Valdez's claim under Section 1981. Following a trial on the Title VII claim, the USDC entered judgment for the defendants holding that Valdez was not fired for discriminatory reasons. Additionally, the USDC ruled that Valdez's prosecution of her Section 1981 claim was groundless, and ordered her to pay the defendants $6,000 in attorneys' fees. Valdez appeals, contending that the USDC erred: (1) by not retroactively applying the Civil Rights Act of 1991, (2) by dismissing her Section 1981 claim, and (3) by not allowing a jury trial on her Title VII claim.

2

## II. Discussion

### A. Civil Rights Act of 1991 - Retroactive or Prospective?

Valdez contends that this court should retroactively apply Section 101(2)(b) and Section 102(c)(1) of the Civil Rights Act of 1991, Pub.L. No. 102-166 (the Act). Section 101(2)(b) of the Act says that "[f]or purposes of this section, the term `make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." In effect, Section 101(2)(b) statutorily reverses the Supreme Court's decision in Patterson v. McLean Credit Union, 491 U.S. 164 (1989). In Patterson, the Court held that a Section 1981 claim will lie only if the discriminatory conduct complained of resulted in a "new and distinct" contractual relationship between the employer and the employee.

Section 102(c)(1) of the Act allows either party to request a jury trial. Specifically, Section 102(c) says that "[i]f a complaining party seeks compensatory or punitive damages under this section--

(1) any party may demand a trial by jury. . . ."[1]

---

[1] Valdez contends, in the alternative, that even if the Civil Rights Act of 1991 is not retroactively applied, she was still entitled to a jury trial on her Title VII claim. That contention conflicts with the clearly established rule that plaintiffs are not entitled to a jury trial when they are seeking only equitable relief under Title VII and, as such, we reject it. See Great Am. Fed. Sav. & Loan Ass'n. v. Novotny, 442 U.S. 366, 374-75 (1979)("Because the Act expressly authorizes only equitable remedies, the courts have consistently held that neither party has a right to a jury trial."); Harrison v. Associates Corp. of North America, 917 F.2d 195, 198 (5th Cir. 1990)(Title VII claims are not

This court has recently issued opinions squarely addressing whether sections 101(2)(b) and 102(c)(1) of the Act should be retroactively applied. In both opinions, this court refused to apply retroactively those sections of the Act.

In Johnson v. Uncle Ben's, Inc., 965 F.2d 1363 (5th Cir. 1992), this court held that Section 101(2)(b) of the Act does not retroactively apply to cases arising out of conduct occurring before the Act was enacted. In reaching its decision, the court decided that the language of the Act was silent as to whether the Act should be retroactively applied, and that the legislative history of the Act was ambiguous. After so finding, the court followed the judicial cannon that "statues affecting substantive rights `are ordinarily addressed to the future and are to be given prospective effect only.'" Id. (quoting Turner v. United States, 410 F.2d 837, 842 (5th Cir. 1969). Section 101(2)(b) affects substantive rights, the court reasoned, and, therefore, the court refused to apply retroactively Section 101(2)(b).

Valdez also contends that Section 102(c)(1) of the Act should be retroactively applied. In Landgraf v. USI Film Products, 968 F.2d 427 (5th Cir. 1992), this court held that Section 102(c)(1) of the Act should not be retroactively applied to allow a jury trial, in a Title VII claim, when the USDC had conducted a bench trial on such claim before the effective date of the Act. The court held that "to require . . . [the defendant] to retry this case because

entitled to a trial by jury.); Davis v. West Community Hospital, 786 F.2d 677, 683 (5th Cir. 1986); Johnson v. Georgia Highway Express Inc., 417 F.2d 1122, 1125 (5th Cir. 1969).

4

of a statutory change enacted after the trial was completed would be an injustice and a waste of judicial resources. We apply procedural rules to pending cases, but we do not invalidate procedures followed before the new rule was adopted."[2]

In the present case, Valdez asks us to apply retroactively Sections 101(2)(b) and 102(c)(1). We decline to do so. This court's decisions in <u>Johnson</u> and <u>Landgraf</u> directly control our decision in the present case. In the present case, the USDC had conducted a trial and entered judgment before the effective date of the Act. Therefore, we refuse to apply retroactively the Act.

B. <u>Section 1981 Claim</u>

Valdez contends that even if this court does not retroactively apply the Act, the USDC still erred in dismissing her Section 1981 claim. To support her contention, Valdez points to a proposal that she submitted to the Chamber. In that proposal, Valdez suggested that the Chamber eliminate the position of vice president of the Economic Development Department and that she assume those additional responsibilities. She also suggested that she receive a pay raise. Valdez contends that the rejection of her proposal was a denial of a promotion. Under <u>Patterson</u>, Valdez contends that denial of a promotion resulted in a denial of an opportunity for

---

[2] In <u>Landgraf,</u> this court also refused to apply retroactively the provision of Section 102 allowing the recovery of compensatory and punitive damages. In reaching that decision, the court reasoned that retroactively applying that provision of the Act to conduct occurring before the effective date of the Act would result in manifest injustice.

her to enter into a "new and distinct" contractual relationship with the Chamber. We reject that contention.

This court's opinion in <u>Harrison v. Associates Corp. of North America,</u> 917 F.2d 195 (5th Cir. 1990), is instructive in addressing Valdez's contention. In <u>Harrison</u>, an employer denied an employee a promotion from C.R.T. operator to lead C.R.T. Operator. The principal difference in duties between the job of C.R.T. Operator and lead C.R.T. Operator was that the lead C.R.T. Operator assigned priority to the work for the department, helped other operators when they had questions, and occasionally trained a new C.R.T. Operator. Additionally, the employer gave the employee who was promoted to lead C.R.T. Operator a $100 a month salary increase. This court held that the employer's refusal to promote the employee to lead C.R.T. Operator did not deny the employee an opportunity to enter into a "new and distinct" contractual relationship with the employer. In reaching its holding, this court stated "[a]lthough a raise in salary which accompanies a change in position is evidence of a new and distinct relation, a raise which is accompanied by no significant change in duties and responsibilities does not reach the level of a change in employment relationship protected by § 1981." <u>Harrison</u> at 198.

In the present case, if the Chamber had accepted Valdez proposal, her duties and responsibilities would not have significantly changed. She would have retained her same job title, and she would have remained in the same type of supervisory position. The only change would have been that Valdez would have

6

assumed the duties of the eliminated position in addition to her normal duties. Those additional duties were, in Valdez's own words, overlapping and duplicitous of her normal duties as vice president of the Public Affairs Department. Clearly, Valdez's unilateral proposed expansion of her position did not rise to the level of a "new and distinct" relation, and therefore the USDC was correct to dismiss Valdez's Section 1981 claim.

    C. <u>Title VII Claim</u>

Valdez contends that the USDC erred in denying her claim under Title VII. In a typical disparate treatment discharge claim under Title VII, the plaintiff must prove a prima facie case of discrimination by showing that: (1) the plaintiff is a member of a protected group; (2) the plaintiff was qualified for the job that was held; (3) the plaintiff was discharged; and (4) after the employer discharged the plaintiff, the employer filled the position with a person who is not a member of a protected group. <u>Vaughn v. Edel</u>, 918 F.2d 517, 521 (5th Cir. 1990). If the plaintiff establishes a prima facie case, the employer must articulate a legitimate nondiscriminatory reason for the termination. <u>Id.</u> If the employer does so, the plaintiff must prove by a preponderance of the evidence that the reason proffered by the employer for termination is pretextual. <u>Id.</u> To show pretext, a plaintiff may prove that the reason proffered by the employer for termination is unworthy of credence, or that the employer's decision was more likely motivated by discriminatory reasons. <u>Texas Dep't of Community Affairs v. Burdine,</u> 450 U.S. 248, 257 (1981). Ultimately, the plaintiff must prove that she was discriminated

7

against because of her race or sex.  See Bienkowski v. American Airlines, 851 F.2d 1503, 1505 (5th Cir. 1988).

In the present case, Valdez established a prima facie case of discrimination.  In response, the Chamber proffered a legitimate nondiscriminatory reason for its firing of Valdez--poor job performance.  At trial, Valdez argued that the reason proffered by the Chamber for firing her was pretextual.  The real reason the Chamber fired her, Valdez argued, was not because she did her job poorly, but because she was Hispanic and female.  To support her argument, Valdez testified that she was required to perform menial duties at the Chamber such as preparing coffee, that she was not given enough staff to perform her duties, and that other Chamber employees excluded her from social activities.  She also testified that the Chamber president told her that she needed to work twice as hard as the other vice presidents because she was young, hispanic, and female.

On the other hand, the Chamber presented evidence that between 1982 and 1986, the president of the Chamber evaluated Valdez five times.  In each of those five appraisals, the president rated the overall performance of Valdez as "needs improvement."  Other witnesses, familiar with Valdez's work, testified that her work was not up to standards and often was not on time.  Based on that evidence, it was not clearly erroneous for the USDC to hold that the Chamber terminated Valdez for poor job performance, not for unlawful discriminatory reasons.  In sum, the USDC rejected Valdez's evidence, because it believed the Chamber's evidence. There was more than ample evidence for it to do so.

For the forgoing reasons, the judgment of the USDC is AFFIRMED.