Reverend Walter SMITH and
Larry Holmes, Plaintiffs,

v.

WALTHALL COUNTY, MISSISSIPPI; Walthall County Democratic Executive Committee, By and Through its Chairperson, John Henry Magee; Walthall County Republican Executive Committee, By and Through its Chairperson, E.L. Reeves; and Walthall County Election Commission, By and Through its Chairperson, John R. Regan, Defendants.

Civ. A. No. 2:91–cv–163WS.

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

Sept. 16, 1994.

Ellis Turnage, Cleveland, MS, for plaintiffs.

Irving C. Mord, Tylertown, MS, for defendants.

## ORDER GRANTING ATTORNEY FEES

WINGATE, District Judge.

Before the court is the plaintiffs' motion for attorney fees and expenses brought pursuant to Title 42 U.S.C. §§ 1973*l*(e) and 1988.[1] By their motion, plaintiffs contend that they are prevailing parties in their lawsuit which challenged under § 2 of the Voting Rights Act[2] the redistricting plans of Walthall County, Mississippi, for the election of County Supervisors and Justice Court Judges. Defendants oppose the motion. The questions presented by this dispute between the parties are: (1) whether plaintiffs are prevailing parties in the instant lawsuit, where the relief they sought herein was accorded them by the resolution of a similar suit, *United States v. Walthall County*, Civil Action No. 2:91–cv–236PN, which did not name them as parties; and (2) if deemed prevailing parties, whether the plaintiffs are entitled to the full amount of attorney fees and expenses they seek, where defendants raise various concerns over plaintiffs' calculated amount.

This court has jurisdiction over this cause of action based on 42 U.S.C. § 1973j(f)[3] and 28 U.S.C. §§ 1331, 1343, 1344, 2201 and 2202. After having reviewed the documentary submissions of the parties and having heard the arguments of counsel, the court finds that the plaintiffs are prevailing parties and entitled to a reasonable award of attorney fees in this case. The reasoning of the court is set out below.

## PERTINENT FACTS

On April 24, 1991, Walthall County submitted a redistricting plan for the election of members of the Board of Supervisors and Justice Court Judges to the United States Attorney General in accordance with 42 U.S.C. § 1973c. Aggrieved over the manner in which this redistricting plan was drawn, the plaintiffs filed this lawsuit on August 14, 1991, claiming that the proposed redistricting plan would preclude the election of blacks to office and, thus, violated Section 2 of the Voting Rights Act of 1965 and the one person one vote principle of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. On September 30, 1991, the United States Attorney General interposed an objection to Walthall County's April 24, 1991, proposed redistricting plan, asserting that the proposed plan violated Section 2 of the Voting Rights Act. Frustrated in his attempts to conclude this matter

---

1. 42 U.S.C. § 1973*l*(e) provides:

   (e) In any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. 42 U.S.C. § 1988(b) provides:

   (b) Attorney's fees

   In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

2. Title 42 U.S.C. § 1973(a) provides:

   No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section.

3. 42 U.S.C. § 1973j(f) provides:

   (f) Jurisdiction of district courts; exhaustion of administrative or other remedies unnecessary. The district courts of the United States shall have jurisdiction of proceedings instituted pursuant to this section and shall exercise the same without regard to whether a person asserting rights under the provisions of this Act shall have exhausted any administrative or other remedies that may be provided by law.

with the defendants without resorting to litigation, the United States Attorney General filed a civil action on November 4, 1991, an action separate from and subsequent to the case *sub judice,* but involving the same issues. This lawsuit was styled *United States of America v. Walthall County, Mississippi, et al.,* Civil Action No. 2:91–cv–236PN.

On April 15, 1992, Walthall County submitted another redistricting plan to the United States Attorney General who responded on June 22, 1992, and interposed no objection. The parties then entered a consent decree, and the federal district court retained jurisdiction of the matter until after elections were held and the duly elected public officials under the new redistricting plan assumed their respective offices. The matter of *United States of America v. Walthall County, Mississippi, et al.,* Civil Action No. 2:91–236PN, was concluded in a manner most favorable to the United States and to the plaintiffs in the case *sub judice.*

On April 13, 1993, this court entered an Order of Dismissal in the above styled and numbered cause following an announcement by the parties that the issues in this lawsuit had been fully and finally adjudicated in the related case of *United States v. Walthall County.*

### PREVAILING PARTY STATUS

█ The defendants contend that this court should not accord the plaintiffs prevailing party status in the case *sub judice* for three principal reasons: (1) because the plaintiffs did not file their lawsuit until August 14, 1991, over three months after Walthall County submitted its first redistricting plan to the United States Attorney General; (2) because the plaintiffs failed to seek a hearing on their request for injunctive relief; and (3) because no order has been entered in the case *sub judice* granting the plaintiffs any of the relief requested in their complaint. Instead, say defendants, the relief the plaintiffs sought came by way of related litigation brought by the United States. In short, defendants present a scenario which implies that the plaintiffs merely rode the "coattails" of the United States and now opportunistically seek to obtain attorney fees.

This court, however, is unpersuaded by the defendant's argument. Firstly, the defendants appear to have forgotten that it was the plaintiffs in the case *sub judice* who filed their lawsuit first in time. The scenario presented by the defendants might carry greater weight but for the plaintiffs taking the initiative to file their lawsuit with no assurance or notion that any other party sympathetic to their position in this matter subsequently would enter into litigation with the defendants.

Secondly, this was not a circumstance where the plaintiffs filed suit in the midst of negotiations between the defendants and the United States which happened to be concluded in due course after the plaintiffs filed a "pile on" lawsuit. Instead, the United States Attorney General became frustrated with the defendants and filed his own lawsuit, charging Walthall County with virtually the same violations as had the plaintiffs in their previously filed lawsuit. Defendants were compelled to reassess their position. Thereafter, they drafted and submitted a new redistricting plan to the United States Attorney General. This plan contained none of the provisions earlier complained of by either the plaintiffs or the United States. Subsequent elections produced the relief the plaintiffs had sought all along, the fair opportunity to elect and the actual result of electing the first black candidate to the post of supervisor in Walthall County. A second black candidate in another of the five new districts was nearly elected.

In *Pembroke v. Woods County, Texas,* 981 F.2d 225 (5th Cir.1993), the Court found that the plaintiffs were prevailing parties entitled to an award of attorney fees where the purpose of the plaintiffs' suit was to improve the conditions of confinement for members of the plaintiff-class at the Woods County jail. Conditions were improved by time of trial but, as the Fifth Circuit Court of Appeals noted, not until after the plaintiffs filed suit. The substantial improvements attained met the plaintiffs' goal. The Fifth Circuit stated:

In *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish School Board,* 919 F.2d 374, 378 (5th Cir.1990), we

held that a plaintiff is entitled to prevailing party status if he establishes two elements: "(1) that the goal of the lawsuit was achieved, and (2) that the suit itself caused the defendant to remedy the [complained of conditions]". If the plaintiff can make this prima facie showing, the burden shifts to the defendant to show that its conduct was "wholly gratuitous."

Plaintiffs have made this prima facie showing. The goal of the plaintiffs' lawsuit *sub judice* was to promulgate voting district(s) through a redistricting plan which would not unfairly impact upon the chances of black candidates to be elected to the offices of Supervisor and/or Justice Court Judge in Walthall County, Mississippi. The defendants remedied the complained of conditions only after the plaintiffs' lawsuit was filed, so the defendants acted at least partly because the plaintiffs' lawsuit was filed. That the United States filed a subsequent lawsuit does not reduce to nothing the plaintiffs' cause of action, nor does the subsequent lawsuit eclipse the plaintiffs' success in this lawsuit.

On the other hand, defendants have submitted no credible evidence to show that its conduct was "wholly gratuitous." Clearly, it was not since the defendants submitted an agreeable plan only when pressured by the threat of two lawsuits.

Hence, in view of the foregoing, this court is persuaded that the plaintiffs here are prevailing parties. As the United States Supreme Court stated in *Estate of Farrar v. Hobby,* —— U.S. ——, ——, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992), "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." The plaintiffs filed their lawsuit and obtained thereby the sought-after modification of the defendants' behavior which materially altered voting procedures in Walthall County.

## DETERMINATION OF REASONABLE FEE

■ The determination of a reasonable fee starts with the lodestar calculation which is the product of the hours reasonably expended multiplied by an hourly rate found to be reasonable given the experience, expertise, and level of involvement of the attorney submitting the claim for fees. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Abrams v. Baylor College of Medicine,* 805 F.2d 528, 535–37 (5th Cir.1986). The court looks to the degree of success attained, then identifies those hours that should be eliminated, or simply reduces the award in accordance with what has been determined to be reasonable. *Hensley v. Eckerhart,* 461 U.S. at page 424, 103 S.Ct. at page 1941; *Texas State Teachers Association v. Garland Independent School District,* 489 U.S. 782, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).

This court will examine the reasonableness of fees requested and base its findings upon the twelve (12) factors which are set forth in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974), and enumerated in Rule 15 of the Uniform Local Rules of this court as follows:

(A) The time and labor required.

(B) The novelty and difficulty of the questions.

(C) The skill requisite to perform the legal services properly.

(D) The preclusion of other employment by the attorney due to the acceptance of the case.

(E) The customary fee.

(F) Whether the fee is fixed or contingent.

(G) Time limitations imposed by the client or the circumstances.

(H) The amount involved and the results obtained.

(I) The experience, reputation, and ability of the attorneys.

(J) The "undesirability" of the case.

(K) The nature and length of the professional relationship with the client.

(L) Awards in similar cases.

While the court is required to give reasons upon which an award is based, it is not required to address fully each of the *Johnson* factors in the recitation of its reasons. *Curtis v. Bill Hanna Ford, Inc.,* 822 F.2d 549

(5th Cir.1987); *Cobb v. Miller,* 818 F.2d 1227 (5th Cir.1987).

■ The court finds that plaintiffs' counsel has over ten years of experience serving as legal counsel in voting rights cases and has been awarded fees at the hourly rate of $110.00 for those services. *See Crowther, et al. v. Newton County, Miss., et al.,* Civil Action No. E87–0046(L). Supporting affidavits provided by other attorneys in civil rights practice recommend hourly rates ranging from $90.00 to $135.00 for service comparable to that provided by plaintiffs' counsel. Therefore, the court finds that the hourly rate of $110.00 is a reasonable rate.

■ Plaintiffs' counsel has submitted an itemized list of 230.6 hours spent in furtherance of the plaintiffs' cause in this case. Defendants object to those hours claimed for travel, claiming that these hours should not be compensated at a rate equal to that for hours spent on actual legal services. Courts have agreed with this contention and held that travel time may be compensated at a rate which is less than the reasonable hourly attorneys' fee rate. *See Watkins v. Fordice,* 807 F.Supp. 406, 414 (S.D.Miss.1992); *Martin v. Mabus,* 734 F.Supp. 1216, 1227 (S.D.Miss.1990); *Beamon v. City of Ridgeland,* 666 F.Supp. 937, 941 (Miss.1987). These cases awarded compensation at an hourly rate which was fifty percent of the reasonable hourly rate for legal services rendered. Therefore, persuaded similarly, this court shall compensate the 89.3 hours claimed by plaintiffs' counsel as travel time at the hourly rate of $55.00.

■ Defendants object to 7.9 hours claimed by plaintiffs for research and drafting related to a motion for a preliminary injunction to stop elections in Walthall Coun-

ty. This motion was filed on September 12, 1991, but was never set for hearing. Later, the 'motion was dismissed as moot. When a plaintiff fails to prevail on a claim that is separate and distinct from his successful claims, the hours expended on the unsuccessful claim should be excluded from calculation of a reasonable fee. *Hensley v. Eckerhart,* 461 U.S. at 430–32, 103 S.Ct. at 1938. Therefore, inasmuch as this motion was never presented to the court, and the plaintiff did not succeed either on the merits of the motion or by filing the motion, the court finds that these hours should be eliminated from the overall lodestar calculation.

■ Additionally, the court finds that 3.7 hours claimed by the plaintiffs for research on an unrelated school board special election matter should not be included in the overall lodestar calculation.

■ Defendants object to all hours claimed by plaintiff for work on developing an alternative redistricting plan. The court has reviewed these hours and finds that they are reasonable. The plaintiffs' lawsuit sought to reform a redistricting plan previously submitted to the United States Attorney General. Formulation of an alternative plan was an essential element of the plaintiffs' case. Therefore, the court will include these hours in the overall computation of the lodestar amount.

Defendants also object to the amount of $2,500.00 claimed by the plaintiffs as out-of-pocket expense for the services of expert witnesses. However, inasmuch as the plaintiffs have withdrawn this claim, this item shall be omitted from the plaintiffs' claim for expenses.[4]

---

4. Title 42 U.S.C. § 1988, effective November 21, 1991, provides for awarding expert witness fees as follows:

  (c) Expert fees
    In awarding an attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court, in its discretion, may included expert fees as part of the attorney's fee.
Plaintiffs have not requested that the court apply this provision retroactively to the case *sub judice.*

Furthermore, no Fifth Circuit decision dealing with the issue of retroactive application of the Civil Rights Act of 1991 has chosen to apply the Act retroactively to subsequently filed cases or to cases pending at the time when the Act was enacted. *See Valdez v. San Antonio Chamber of Commerce,* 974 F.2d 592, 594 (5th Cir.1992); *Wilson v. UT Health Center,* 973 F.2d 1263, 1267 (5th Cir.1992); *Landgraf v. USI Film Products,* 968 F.2d 427, 432–33 (5th Cir.1992); *Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1373 (5th Cir. 1992).

394

■ Finally, defendants contend that plaintiffs are not entitled to enhancement of the lodestar in this case. Defendants take particular exception to the 100% enhancement suggested by the plaintiffs as fitting in this case. Plaintiffs base their claim for an upward adjustment of 100% upon "the contingent nature of litigation" and the "risk of non-payment" for services rendered.

■ Enhancement of the lodestar is appropriate only in certain "exceptional" cases such as those in which there is a substantial risk of not prevailing, or in which the issues are so novel or complex that the lodestar amount awarded would not provide a reasonable fee that would adequately reflect the quality of the representation. *Von Clark v. Butler*, 916 F.2d 255, 260 (5th Cir.1990); *Hensley v. Eckerhart*, 461 U.S. at 434–35, 103 S.Ct. at 1940. The burden of proving that enhancement is necessary to the determination of a reasonable fee is on the fee applicant. *Blum v. Stenson*, 465 U.S. 886, 896–98, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984). Even if a court finds that enhancement is proper considering the exceptional risk of loss taken by counsel, the upward adjustment of the lodestar should be no more than one third or 33%. *See Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 729–31, 107 S.Ct. 3078, 3089, 97 L.Ed.2d 585 (1987).

The plaintiffs' counsel submits an affidavit wherein he states that he only accepts voting rights cases on a non-fee generating basis. Hence, says plaintiff's counsel, any fees he receives are contingent on prevailing in court. Also, plaintiffs submit three affidavits from attorneys familiar with the customary hourly rates charged in the relevant market for legal services in civil rights and voting rights cases. One of the affidavits does not mention enhancement. Another affidavit suggests that fees in voting rights cases must be enhanced in order to attract competent counsel. The third affidavit states that many plaintiffs would be unable to afford competent counsel without the prospect of fee enhancement. All three affidavits state that the issues in this case were novel and complex. That portion of plaintiff's memorandum which addresses fee enhancement relies primarily upon the statements contained in these affidavits.

The court finds the affidavits to be conclusory with regard to the enhancement issue, lacking in reasons or justifications for the application of an upward adjustment in this case. Furthermore, neither complexity nor novelty of the issues is an appropriate factor in determining whether to increase a basic fee award. *Blum v. Stenson*, 465 U.S. at 898–900, 104 S.Ct. at 1549. The novelty and complexity of the issues is presumably reflected in the number of billable hours times reasonable hourly rates. *Id.* Moreover, no provision is made under § 1988 [or § 1973*l*(e) ] for using the risk of loss or the contingent nature of prevailing in the lawsuit as an independent basis for increasing an otherwise reasonable fee. *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. at 722–23, 107 S.Ct. at 3085. Therefore, the plaintiffs' request for enhancement of the lodestar is denied.

■ Finally, plaintiffs submit a supplemental motion for attorney fees and a supporting affidavit asserting that their counsel's customary billing rate is $175.00 per hour. Citing the recent case of *Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir.1993), plaintiffs contend that the Fifth Circuit has directed district courts to award an attorney's customary billing rate as the lodestar amount where the attorney's normal billing rate is within the range of rates for attorneys with similar skill and experience. This court has reviewed the case of *Watkins v. Fordice* and finds that, contrary to the plaintiff's assertion, district courts are not directed to set the lodestar amount in accordance with the attorney's customary billing rate. Instead, the Fifth Circuit in that case said that it cannot know the reasons for a district court's choice of hourly rates if the district court does not state its reasons in its opinion. Merely tracking the *Johnson* factors, said the Fifth Circuit, is not enough. The Fifth Circuit directed the district court either to use the attorney's customary rate when calculating the lodestar or to engage in a discussion of the facts underlying its determination of the lodestar amount. *Watkins*, at 459.

Prior to the supplemental motion filed by the plaintiffs, this court had before it the affidavits of counsel stating their respective opinions in regard to what constituted a reasonable hourly rate. One attorney stated that an award of fees based on an hourly rate of $100.00 was not uncommon and that an hourly rate of $120.00 for this type litigation would be reasonable. Another attorney stated in his affidavit that his prior law firm handled civil rights and voting rights cases and "received an effective rate higher than its normal rates of $120.00 for lawyers with 6–10 years experience and $150.00 for lawyers with more than 10 years experience." This affidavit offered no information concerning the complexity or novelty of any specific cases, the nature of the litigation, or any other reasons supporting the alleged charges. Yet, another attorney's affidavit stated that lawyers with 4–7 years experience charge from $90.00 to $115.00 per hour for civil rights and voting rights litigation, while lawyers with over 8 years experience charge from $115.00 to $135.00 per hour. This affidavit asserted that some lawyers with 10 years of experience or more might charge as much as $200.00 per hour. Finally, the affidavit of plaintiffs' counsel himself states that he has been awarded fees in voting rights cases based on the hourly rate of $110.00 per hour. The affidavit of plaintiffs' counsel submitted that $125.00 would be a reasonable hourly rate for his services. Now, in the wake of *Watkins v. Fordice*, plaintiffs' counsel presents his second affidavit to this court asserting that his customary billing rate for cases involving medical malpractice, insurance contracts, and automobile accidents is $175.00 per hour.

This court selected the hourly rate of $110.00 because that rate, according to counsel's own affidavit, had been awarded to him before in similar litigation before this court. Additionally, this court noted that counsel was greatly aided in the favorable disposition of this case by the presence of the United States Attorney General. While the plaintiffs' complaint was not a "pile on" lawsuit, plaintiffs found a formidable ally in pursuit of the relief the plaintiffs sought whose assistance in the eventually favorable outcome to the plaintiffs in this case is not lost on this court. Counsel for the plaintiffs may have entered the field of combat alone, but soon he was joined with the strong force and resources of the United States. The defendants, assailed on two fronts, capitulated and redrafted a redistricting plan which contained none of the characteristics complained of by the plaintiffs. While plaintiffs' counsel may be heard to argue that he led the initial charge to the relief sought, he cannot be heard to say that he accomplished the desired goal single-handedly.

Now, plaintiff's counsel asserts that he is entitled to an hourly rate of $175.00 based upon the Fifth Circuit's decision in *Watkins v. Fordice*. However, it is clear that plaintiff's counsel could have submitted this very same request for the alleged customary hourly rate in his original affidavit in support of attorney fees based upon the Fifth Circuit's decision in *Islamic Center of Mississippi v. Starkville*, 876 F.2d 465, 469–70 (5th Cir. 1989). In *Islamic Center*, the Court held that a district court must provide reasons for choosing a billing rate different from the attorney's customary billing rate, precisely the same holding touted by plaintiffs' counsel to constitute a new requirement of law set forth by the Fifth Circuit in *Watkins v. Fordice* (which relied on *Islamic Center* as the basis for its holding).

This court is persuaded to adhere to its original determination of hourly rate. The supplemental motion for attorney fees appears to be the product of oversight, supported by nothing other than counsel's own affidavit—an affidavit which must be reviewed in conjunction with counsel's prior affidavit which assured this court that a reasonable hourly rate for counsel's services should be $125.00. Having reviewed both affidavits, this court awards the following as a reasonable fee for the services of plaintiffs' counsel in this case:

| | |
|---|---|
| Legal Services: 129.7 hours @ $110.00 = | $14,267.00 |
| Travel Time: 89.3 hours @ $55.00 = | $ 4,911.50 |
| Out-of-pocket Expenses = | $ 1,283.25 |
| Reasonable Fee + Expenses Total = | $20,461.75 |

SO ORDERED.