Michael A. ALEX, Plaintiff,

v.

## MANAGEMENT & TRAINING CORPORATION, Defendant.

Civil Action No. B–10–304.

United States District Court,
S.D. Texas,
Brownsville Division.

Signed Feb. 24, 2012.

Keith N. Uhles, Mario M. Chavez, Royston Rayzor et al., Brownsville, TX, William W. Pierson, Royston Rayzor et al., Corpus Christi, TX, for Plaintiff.

Rex N. Leach, Susan Renee Sullivan, Valorie Glass, McAllen, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

ANDREW S. HANEN, District Judge.

Before the Court is Defendant Management & Training Corporation's ("MTC") Motion for Summary Judgment. Doc. No. 19. In its motion, MTC argues that a summary judgment should be granted in its favor as to all of Plaintiff Michael A. Alex's ("Alex") claims of racial discrimination and retaliation. Alex's complaint al-

leges three causes of action under Texas and federal law: (1) hostile work environment; (2) retaliation; and (3) discriminatory treatment. Alex timely responded to MTC's motion. Doc. No. 25. MTC subsequently filed a reply. Doc. No. 28. After considering the parties' contentions and the applicable law, the Court **GRANTS IN PART and DENIES IN PART** MTC's motion for the reasons set forth below.

### 1. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Duffie v. United States,* 600 F.3d 362, 371 (5th Cir.2010) (quoting *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir.2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))). Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Celotex,* 477 U.S. at 321–25, 106 S.Ct. 2548. The nonmoving party must go beyond the pleadings and provide specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The court should not, in the absence of any proof assume that the nonmoving party could or would prove the necessary facts. *See Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)). The nonmoving party's burden "is not satisfied simply by creating some metaphysical doubt as to the material facts or by providing only conclusory allegations, unsubstantiated assertions or merely a scintilla of evidence." *Id.* (citations omitted). A court will resolve factual controversies in favor of the nonmoving party "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Id.* Nonetheless, the court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Servs.,* 504 U.S. 451, 456–58, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

### 2. Hostile Work Environment

■ The Texas Commission on Human Rights Act ("TCHRA") (Chapter 21 of the Texas Labor Code) prohibits certain employment practices if made "because of race, color, disability, religion, sex, national origin, or age." TEX. LABOR CODE ANN. §§ 21.001–.556 (West 2006). In interpreting the TCHRA, courts should look to the interpretation of analogous federal provisions in Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"). *See Pineda v. United Parcel Serv., Inc.,* 360 F.3d 483, 487 (5th Cir.2004); *Waffle House, Inc. v. Williams,* 313 S.W.3d 796, 804 (Tex.2010). The TCHRA and Title VII have been interpreted to prohibit requiring people to work in a discriminatorily hostile or abusive environment. *See Dediol v. Best Chevrolet, Inc.,* 655 F.3d 435, 440 (5th Cir.2011) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)); *Waffle House, Inc.,* 313 S.W.3d at 804.

■ As recently recited by the Fifth Circuit, to establish a claim of hostile work

environment under Title VII, a plaintiff must prove:

(1) [he] belongs to a protected group; (2) [he] was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir.2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir.2002) (citations omitted)). In order for a hostile environment to be actionable, it must be "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir.2009) (claims of harassment based on gender) (quoting *Harris*, 510 U.S. at 21, 114 S.Ct. 367).

 MTC contends in its motion that Alex has not proffered evidence to show the alleged harassment was sufficiently severe or pervasive. This Court agrees. "Discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment that violates Title VII." *Wallace v. Texas Tech University*, 80 F.3d 1042, 1049 n. 9 (5th Cir.1996) (citing *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995)). However, "simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir.2004) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citation

omitted)). Whether a workplace constitutes a hostile work environment depends on several factors, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Yellow Transp., Inc.*, 670 F.3d at 651 (quoting *Ramsey*, 286 F.3d at 268).

The three instances of racial animus raised by Alex in support of his hostile work environment claim were sporadic and infrequent, and occurred over a period of years. The discrete incidents were: (1) in late 2007 an unidentified security officer allegedly called him a racial slur in Spanish, *viz.*, "mayate"; (2) in 2009 Alex allegedly heard a Security Officer named Longoria say, referring to detainees, "we're having problems with these damn niggers. Not you, Alex. You're not like them."; and (3) the vague assertion that the word "nigger" was used "on several occasions" by Security Officer Carlos Urbina in Alex's presence. Taking the summary judgment evidence as a whole, and even viewing it most favorably to Alex, the alleged conduct over the approximately three years that Alex worked at MTC, while distasteful, was not sufficiently "severe or pervasive."

Further, Alex has not proffered evidence that any of the alleged discriminatory treatment was "physically threatening or humiliating," or that it unreasonably interfered with his work performance. *See Yellow Transp., Inc.*, 670 F.3d at 651 (quoting *Ramsey*, 286 F.3d at 268). Instead, most of the incidents that Alex refers to were "mere offensive utterance[s]," which also cuts against finding a sufficiently hostile environment in this case. *Id.* Two of the alleged instances of discriminatory treatment involved the use of the word "nigger" in his presence. In the third instance, the use of the word "ma-

yate," was not initially understood by Alex, and was not by any indication physically threatening or humiliating. When viewed in the light most favorable to Alex, these incidents are not sufficient to raise a factual issue in opposition to MTC's motion for summary judgment.

Based upon the evidence presented by Alex, a reasonable jury could not conclude that the alleged discriminatory treatment at MTC was sufficiently severe or pervasive. "[T]he Supreme Court has warned that these high standards are intentionally demanding 'to ensure that Title VII does not become a 'general civility code.' and when properly applied, they will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language.'" *Howard v. United Parcel Serv., Inc.*, 447 Fed.Appx. 626, 632 (5th Cir.2011) (unpublished) (quoting *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275). Therefore, MTC's motion for summary judgment (Doc. No. 19) is **GRANT-ED,** insofar as it relates to Alex's hostile environment claim.

### 3. Retaliation and Disparate Treatment

Alex also asserts claims of disparate treatment and retaliation under the TCHRA, Title VII, and 42 U.S.C. § 1981. Again, this Court may rely upon federal interpretations of Title VII claims in analyzing a comparable claim under the TCHRA. *See Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 (Tex.2010). The burden-shifting structure applicable to Title VII disparate treatment cases, set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), also applies in retaliation cases. *LeMaire v. Louisiana Dept. of Transp.*, 480 F.3d 383, 388 (5th Cir.2007).

Under this framework, the plaintiff initially has the burden of establishing a prima facie case of discrimination. *Id.* The requirements to establish a prima facie case under a retaliation claim are different from a disparate treatment claim. As to retaliation, a plaintiff must show: (1) he engaged in a protected activity; (2) an adverse employment action occurred, and (3) a causal link existed between the protected activity and the adverse action. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 314 S.W.3d 548, 558 (Tex.App.-Corpus Christi 2010, pet. granted) (citing *Dias v. Goodman Mfg. Co., L.P.*, 214 S.W.3d 672, 676 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Wal–Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 295 (Tex.App.-Corpus Christi 2000, pet. denied)). As to disparate treatment, "a plaintiff must show that: '(1) the plaintiff is a member of a protected group; (2) the plaintiff was qualified for the job that was held; (3) the plaintiff was discharged; and (4) after the employer discharged the plaintiff, the employer filled the position with a person who is not a member of a protected group.'" *Black v. Pan Am. Labs., L.L.C.*, 646 F.3d 254, 259 (5th Cir.2011) (quoting *Valdez v. San Antonio Chamber of Commerce*, 974 F.2d 592, 596 (5th Cir.1992)). Considering the summary judgment evidence in the light most favorable to Alex, a prima facie case of retaliation and disparate treatment exists.

If the plaintiff establishes a prima facie case, the burden shifts to the employer to show a legitimate, nondiscriminatory or nonretaliatory reason for the adverse employment action. *Id.* MTC met its burden of producing a legitimate reason, which is that Alex violated the MFC fraternization policy. *Cf. Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir.1997); *Smith v. Wal–Mart Stores* (No. 471), 891 F.2d 1177 (5th Cir.1990). Once

the employer satisfies this burden, the burden then shifts back to the plaintiff to show that the employer's reason is pretextual. *See Black v. Pan American Laboratories, L.L.C.*, 646 F.3d 254, 259 (5th Cir. 2011) (quoting *Valdez v. San Antonio Chamber of Commerce*, 974 F.2d 592, 596 (5th Cir.1992)); *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir.2001).

The evidence of pretext offered by Alex in support of both claims is certainly not overwhelming. However, when viewed in the light most favorable to Alex, the Court finds that based upon this evidence a reasonable jury could return a verdict for the non-movant (Alex). The evidence raises fact questions about whether MTC's stated reason was the true reason for Alex's termination or merely pretext for retaliation or racial discrimination. These questions must be resolved by the jury. For the foregoing reasons, the Court **DENIES** MTC's motion for summary judgment (Doc. No. 19) insofar as it relates to Alex's retaliation and disparate treatment claims.